**UNITED STATES of America, Appellee,**

v.

**GAF CORPORATION, GAF Chemicals Corporation, Jay & Company, Inc., and James T. Sherwin, Defendants–Appellants.**

**No. 1375, Docket 89–1013.**

United States Court of Appeals, Second Circuit.

Argued July 17, 1989.

Decided Aug. 30, 1989.

Laurence H. Tribe, Cambridge, Mass. (Kenneth J. Chesebro, Brian Stuart Koukoutchos, Gene B. Sperling, Cambridge, Mass., Arthur L. Liman, Max Gitter, David E. Nachman, and John N. Gevertz, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for defendants–appellants.

Kevin R. Czinger, Asst. U.S. Atty., S.D.N.Y., New York City (Carl H. Loewenson, Jr., Kerri Martin Bartlett, Asst. U.S. Attys., S.D.N.Y., New York City, of counsel), for appellee.

* The Hon. Edward D. Re, Chief Judge, United States Court of International Trade, sitting by

Before WINTER and MAHONEY, Circuit Judges, and RE,* Judge.

WINTER, Circuit Judge:

The issue in this appeal arose when the government failed to advise the defense of the existence of an expert's report concerning key documents, as required by Fed.R. Crim.P. 16. The defense moved for a mistrial, a motion that the district court granted after negotiations between counsel failed to produce a mutually agreeable alternative. When the district court scheduled a retrial to begin the following day, the defense moved to dismiss the indictment on the grounds that a retrial would violate the double jeopardy clause of the Fifth Amendment. The defendants appeal from the denial of their motion.

We affirm.

## BACKGROUND

The defendants were charged with conspiring to manipulate the price of Union Carbide stock during GAF's negotiations to sell its block of Union Carbide stock in October 1986. At the first trial, the key government witness was Boyd Jefferies, a broker-dealer who was cooperating with the government after pleading guilty to unrelated record-keeping and margin violations. The government, through Jefferies' testimony, sought to prove that Jefferies had manipulated the price of Union Carbide stock on GAF's behalf and was reimbursed by GAF for losses his company suffered as a result.

The key documents were two copies of a November 5, 1986 invoice sent by Jefferies to GAF in the amount of $40,000. Jefferies testified that the invoice was a bill to GAF for losses his company incurred from manipulating the price of Union Carbide stock, whereas GAF claimed that the invoice was a bill for Jefferies' legitimate services in connection with GAF's purchase of shares of the British company Davy Plc.

Government Exhibit 1, produced from the files of GAF, was a photocopy of the

designation.

invoice that bore the signature of defendant James Sherwin, vice chairman of the board of GAF. The original invoice with Sherwin's signature has never been produced by GAF. Exhibit 1A, an original ribbon copy of the invoice produced from the files of Jefferies & Company, differed slightly but crucially. It contained the typewritten words "RE: Davy Plc." and did not bear Sherwin's signature. The discrepancy between the copies raised the issue whether the invoice had been altered, and, if so, by whom. This issue and the parties' strategies concerning it led to the mistrial and the raising of the double jeopardy issue.

The defense's opening statement made no mention of the discrepancies between the copies of the invoice. Shortly after opening statements but before Jefferies' testimony, the prosecution received a written report from a documents expert, Gus Lesnevich, stating that the original invoice had contained the words "RE: Davy Plc." but that these words were "whited out" before the copy, Exhibit 1, had been made. The government made no attempt to inform defense counsel of the report when it was received.

On January 3, 1989, when the prosecution offered Exhibit 1, the version from GAF's files without the "Davy Plc." notation, defense counsel conducted a voir dire of Jefferies suggesting that Jefferies had fabricated Exhibit 1A by adding the "Davy Plc" notation. This strategy was said by government counsel to have come as a surprise to them, because they believed that Jefferies had had no personal involvement in the preparation of the invoice and because GAF had been unable to produce the original invoice with Sherwin's signature. The government thus anticipated that the defense would not initially pursue a strategy underlining GAF's failure to produce the original and thereby risking the jury's inferring alteration of the original by someone at GAF.

The next morning, the government presented defense counsel with copies of Lesnevich's report indicating that someone, possibly at GAF, had altered the invoice by removing the "Davy Plc" notation, before making the copy marked as Exhibit 1. If the report was accurate, the suggestion made by defense counsel in voir dire, that Jefferies had fabricated Exhibit 1A by adding the "Davy Plc" notation, would of course be incorrect.

The defense, claiming that the failure to provide the report before Jefferies testified violated Fed.R.Crim.P. 16(a)(1)(D) and a pretrial order of the district court, moved for a mistrial. It argued that had it known of the Lesnevich report, it never would have pursued the theory that Jefferies had added the notation. And, having now pursued that theory in front of the jury, the defense considered the government's unexpected controverting of it by expert testimony to be devastating. The defense made no attempt simply to exclude Lesnevich's testimony and continue the trial, however. Instead, it insisted on a mistrial.

After reserving decision, the district court announced on January 9 its intention to grant the motion. The government then suggested a brief delay to allow negotiation with defense counsel concerning alternatives to a mistrial. The government thereafter made several proposals. These included dismissing a count alleging the aiding and abetting of false record-keeping; removing the fabrication issue from the case entirely; allowing the defense to strike the voir dire from the record if it so desired; and having the court give a curative instruction to the jury. Defense counsel insisted that these steps would not cure the prejudice, for they could not guarantee that the jury would not speculate about fabrication in a way that would harm the defense. Over the opposition of the government, the district court granted the mistrial on January 10. Nevertheless, it found that the government had not intentionally brought about the mistrial motion and held that retrial was not barred by double jeopardy principles. Jury selection was set for the following day.

To protect the record, the defense moved to dismiss the indictment on double jeopardy grounds. Upon the expected denial of the motion, the defense asked for a stay of the retrial pending appeal of the double

jeopardy issue. The district court, finding the appeal "frivolous," nevertheless agreed to stay jury selection for a few days to allow the defense to appeal. On January 12, we denied a motion to stay further proceedings in the district court and also denied a motion to expedite appeal, without prejudice to pursuit of the double jeopardy claim through normal appellate processes. Justice Marshall thereafter denied a stay.

At the second trial, the defense altered its position slightly on the fabrication issue. At the first trial the defense had argued that Jefferies had fabricated Exhibit 1A by adding the "Davy Plc" notation. At the second trial, it presented expert testimony that agreed with the government's expert report insofar as it stated that Exhibit 1 was a copy of a document identical to Exhibit 1A with the "Davy Plc" notation removed. The defense expert concluded, however, that the notation was removed with correction tape on the kind of typewriter on which the invoice itself was typed. Both experts thus agreed that the original of Exhibit 1 was altered but differed as to whether it was Jefferies or someone at GAF who had made the change. On March 23, the district court declared another mistrial after the jury deadlocked. A third trial has been scheduled for November 6, 1989.

## DISCUSSION

On appeal, two claims are raised. The first is that the government's attempt to use Lesnevich's testimony after the voir dire of Jefferies forced the defense to move for a mistrial and that a retrial would subject the defendants to double jeopardy. The second is that the government's negotiating posture after the district court indicated that it would grant the requested mistrial constituted an unconstitutional condition.

■ We turn to the first claim. The double jeopardy clause of the Fifth Amendment protects criminal defendants from being prosecuted repeatedly for the same offense. *See United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). Generally, however, the principles of double jeopardy do not bar a second prosecution following a mistrial declared at the request of the defendant. *See United States v. Tateo,* 377 U.S. 463, 467, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). In *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), however, the Supreme Court endorsed an exception to this general rule. In *Kennedy,* the Court stated that a defendant who has successfully moved for a mistrial on grounds of prosecutorial misconduct may successfully claim double jeopardy as a bar to retrial, but "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial." 456 U.S. at 676, 102 S.Ct. at 2089.

The *Kennedy* exception is thus intended to prevent the prosecution from forcing a mistrial when things are going badly for it, in the hope of improving its position in a new trial. The Court emphasized the narrowness of the exception, stating that harassing or overreaching conduct on the part of the prosecutor that justifies a mistrial nevertheless "does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id.* at 676, 102 S.Ct. at 2089. In *Kennedy* itself, for instance, the Court held that double jeopardy did not bar a retrial where the prosecutor asked an expert witness whether the reason he had never done business with the defendant was that the defendant was "a crook." Finding that the prosecutor had not intended to cause a mistrial, the Court rejected the defendant's double jeopardy claim.

■ The circumstances here in no way constitute the kind of misconduct needed to sustain a double jeopardy claim under *Kennedy.* There is simply no evidence that the prosecutor here "intended to 'goad' the defendant into moving for a mistrial." *Id.* The district court found that the strategy pursued by the defense during the voir dire of Jefferies was completely unanticipated by the prosecution, who reacted with "shocked surprise." Our review of the record does not undermine this finding. It is true that, as events unfolded at trial, the

presence of the notation "Davy Plc" was helpful to the defense's claim that the invoice was for legitimate investment banking services. It does not follow, however, that the government believed there would have been no motive for someone at GAF to delete the notation at an earlier time. If someone at GAF had sought to cover their tracks by altering documents, that person might well have believed that a deletion of the "Davy Plc" notation was a safer course than risking the disproving of its accuracy. The absence of an original at GAF was also reason for the government not to anticipate the voir dire that occurred. Although the district court findings imply a certain tunnel vision on the part of government counsel, that is a far cry from the kind of misconduct required by *Kennedy*.

On appeal, the defense does not seriously challenge this conclusion but argues that the government's insistence on introducing Lesnevich's testimony and report, rather than the withholding of the report, were the events that caused the mistrial. Its appellate brief thus states, "Had the prosecution been willing to proceed with the first trial as it was then unfolding, without introduction of the expert's analysis that it had hitherto improperly withheld, no mistrial would have been occasioned." Brief of Appellants at 24. This is a half-truth, however. Although the government's declaration of its intent to use Lesnevich may have been the occasion for the mistrial, it was not the cause. As the statement quoted from appellants' brief implies, no prejudice to the defense would have occurred if the trial had continued with Lesnevich's testimony and report excluded. Defense counsel's knowledge of the Lesnevich report in no way bound them to cease their attacks on Jefferies regarding the documents in question, and the first jury was ignorant of the report's existence. Nevertheless, the defense consciously chose not to move for exclusion of Lesnevich and his report and for a continuation of the first trial but instead sought a mistrial as the sole remedy it desired for the Rule 16 violation. We cannot know what the course of events would have been had a motion for exclusion been proffered as an alternative to a mistrial. That is of no consequence for purposes of double jeopardy, however. The defense made a conscious decision to forgo the option of moving for exclusion of the government's expert and successfully sought to abort the trial. Having made that choice, no doubt for informed tactical reasons, it cannot claim the protection of double jeopardy.

We turn now to the claim that the government's negotiating posture after the district judge had announced her intention to grant the mistrial motion amounted to an unconstitutional condition. Because that posture involved an offer to exclude Lesnevich and his report only on the condition that the defense abandon its attack on Jefferies, it is argued that the government conditioned the defendants' right to a single trial upon their abandoning their rights, *inter alia*, to cross-examine and to present a defense. We disagree.

We do not address the doubtful proposition that the government may not seek to avoid a mistrial by negotiating a mutual forbearance pact with regard to trial issues. We need not reach it because the argument is based on an erroneous premise. The premise of the unconstitutional condition argument is that after the district court's statement of January 9, the government's offer "forced the defense to give up *either* the right to complete the first trial *or* the right to present a full defense." Reply Brief of Appellants at 8 (emphasis in original). That premise is entirely incorrect, however. Judge Lowe's statement of January 9 was not a ruling forced upon a resisting defense team that gave the government negotiating leverage. She was granting a defense motion. As explained above, it was the defense that insisted on the mistrial as the sole feasible remedy for the violation of Rule 16. The claim made on appeal that on January 9 the district court was bent on a mistrial whether or not the defense wanted it and would not have considered a less drastic remedy that might have allowed the first trial to continue is entirely far-fetched. We of course do not know what her reaction might have been to an exclusion motion,

but only because the defense preferred a mistrial.  Having successfully pursued that mistrial, the defense may not now treat it as the hard place against which it was pressed by the government's rock.

Affirmed.