UNITED STATES of America

v.

John GAMBINO, a/k/a "Giovanni," Joseph Gambino, a/k/a "Joe," a/k/a "Giuseppe," Lorenzo Mannino, a/k/a "Lore," and Matteo Romano, Defendants.

No. (9S) 88 Cr. 919 (PKL).

United States District Court,
S.D. New York.

Nov. 12, 1993.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (Patrick J. Fitzgerald, Richard B. Zabel, of counsel), for U.S.

Santangelo, Santangelo & Cohen, New York City (George L. Santangelo, of counsel), for John Gambino.

Edward S. Panzer, New York City (Edward S. Panzer, of counsel), Bruce Cutler (Bruce Cutler, of counsel), for Joseph Gambino.

Charles Carnesi, of counsel, Brooklyn, NY, for Lorenzo Mannino.

Howard R. Leader, New York City, for Matteo Romano.

### ORDER AND OPINION

LEISURE, District Judge.

The defendants have filed a motion (1) to bar the retrial of drug trafficking, murder, and other charges on the grounds of double jeopardy, (2) to vacate the convictions of John and Joseph Gambino for bail jumping, (3) for the dismissal of these charges pursuant to the supervisory powers of this Court, and (4) seeking other forms of relief, namely the production of names and documents from the Government. The Government opposes the defendants' motion. For the reasons set forth below this Court denies the defendants' motion in its entirety.

### Background

The defendants, JOHN GAMBINO, a/k/a "Giovanni," JOSEPH GAMBINO, a/k/a "Joe," a/k/a "Giuseppe," LORENZO MANNINO, a/k/a "Lore," and MATTEO ROMANO were charged in the ninth superseding indictment, with a variety of criminal charges, including committing and attempting to commit acts of racketeering involving dealing in narcotics and other dangerous drugs, murder, extortion, loansharking, bribery, and illegal gambling.

On February 1, 1993, the first trial began and the jury panel was sworn. At trial Government witness Salvatore Gravano provided, or corroborated, evidence concerning: (1) the alleged participation of defendants John Gambino and Joseph Gambino and Lorenzo Mannino in the murder of Francesco Oliveri; (2) their alleged status in the Gambino crime family; (3) the alleged participation of John Gambino in a racketeering enterprise; and (4) the Gambino crime family's so-called "rule against drugs" and its application with respect to the defendants.

In preparation for trial the Assistant United States Attorneys ("AUSAs") from the United States Attorney's Office for the Southern District of New York ("Southern District") took substantial steps to learn what information Gravano had about the alleged narcotics trafficking by the defendants. This preparation included reviewing Gravano's testimony in prior trials, and meeting with AUSAs from the United States Attorney's Office for the Eastern District of New York ("Eastern District").

On May 18, 1993, after the close of the evidence at trial, but prior to the summations, an article appeared in a local newspaper alleging Gravano's involvement in a heroin trafficking scheme with Pasquale Conte (the "Scheme"). In open court, AUSA James Comey, lead counsel for the Government, informed the Court that the appearance of the article was the first time that he, co-counsel, AUSA Patrick Fitzgerald, or anyone in the Southern District, became aware of Gravano's possible involvement in a drug trafficking scheme with Conte. At the time of this development, the Court offered to reopen the case and recall Mr. Gravano for the limited purpose of making him available to the defendants for additional cross examination. The defendants declined the Court's offer to have Mr. Gravano recalled. On May 26, 1993 after additional discussion on this matter, this Court again offered to make Mr. Gravano available to the defendants for cross examination. The defendants again declined.

On June 4, 1993, the jury returned a verdict of guilty on the bail jumping count as to John Gambino and Joseph Gambino, but was unable to reach a verdict on the remaining counts. The Court declared a mistrial as to the counts on which the jury was unable to reach a verdict, and the Government immediately sought a new trial.

On October 15, 1993, the defendants moved this Court for an order barring a retrial based on double jeopardy grounds because of alleged prosecutorial misconduct.

### Discussion

#### I. The Standard for a Double Jeopardy Claim

■ The Second Circuit has recently clarified the standard for a double jeopardy claim based on prosecutorial misconduct. In *United States v. Pavloyianis*, 996 F.2d 1467 (2d Cir.1993), the Second Circuit, citing *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), held that double jeopardy bars a retrial when the prosecutorial misconduct "giving rise to the mistrial was intended to goad or provoke [the defendant] into moving for the mistrial." *Pavloyianis*, 996 F.2d at 1473. The Second Circuit held that when, as in the case at the bar, the alleged prosecutorial misconduct did not cause a mistrial, double jeopardy bars a retrial "only where the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *Id.* at 1474 (quoting *United States v. Wallach*, 979 F.2d 912, 915–16 (2d Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993)).[1] This Court must examine the objective facts and determine: (1) if any misconduct was in fact present, (2) if there were acts of misconduct, whether the misconduct was deliberate and committed with the anticipation that an acquittal was likely.

#### II. Likelihood of Acquittal

■ This Court is unable to find that in this case, double jeopardy bars a retrial. Even accepting, *arguendo*, the defendants' contention that there was deliberate prosecutorial misconduct, there is no evidence to support the contention that actions were taken by the prosecutor with the specific objective of avoiding an acquittal that the prosecutor believed at the time was likely to occur.

See *Pavloyianis*, 996 F.2d at 1474. This Court has had the benefit of viewing the presentation of the Government's case in its entirety, and in light of the extensive record which was developed, I find no support for the defendants' allegations that the prosecutor believed acquittal was probable. Rather, the extent and completeness of the Government's case supports the prosecution's claim that the Government anticipated the conviction of the defendants. *See* Comey Affidavit at ¶ 28. The defendants have thus failed to satisfy the second prong delineated in *Pavloyianis*, namely that the Government took action which was deliberate and committed with the anticipation that an acquittal was likely.

#### III. The Alleged Misconduct

The alleged misconduct arises out of the testimony of Salvatore Gravano, a Government witness. The defendants allege that the Southern District withheld information about Gravano's involvement in the above mentioned drug-trafficking scheme. Defendants' also claim that the Southern District withheld exculpatory materials showing that Gravano had discussed drug deals with a number of "captains" of the Gambino crime family, but had not had such discussions with John Gambino. Defendants contend that these materials show that Gravano committed perjury. Affidavit of George Santangelo, Esq., dated October 15, 1993 ("Santangelo Affidavit") at ¶ 35. The defendants argue that if they had been in possession of this information, they would have been able to ensure an acquittal for Gambino and the other defendants. Santangelo Affidavit at ¶ 37.

#### A. Southern District's Knowledge of The Scheme

■ In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process

---

1. It should be noted that in *Pavloyianis*, the District Judge, Judge Keenan, denied the double jeopardy motion without a hearing, finding no evidence on the record that the prosecutor anticipated a likely acquittal. *United States v. Pavloyianis*, 1992 WL 396432 (S.D.N.Y., Dec 21, 1992). The Second Circuit affirmed. *United States v. Pavloyianis*, 996 F.2d 1467 (2d Cir.1993).

where the evidence is material either to guilt or punishment." *Id.* at 87, 83 S.Ct. at 1196–97. As a threshold matter, the defendant must show that the Government actually suppressed evidence.

 The prosecutor's duty to disclose information necessarily extends only to "information which had been known by the prosecutor but unknown to the defense." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). Accordingly, the Government is not required to disclose evidence it does not possess or of which it is unaware. *Morgan v. Salamack,* 735 F.2d 354, 358 (2d Cir.1984). *See United States v. Locascio,* 6 F.3d 924, 949 (2d Cir. 1993) (where the information was neither known to the prosecutorial team nor exculpatory in nature, no *Brady* violation occurred [2]); *United States v. Tillem,* 906 F.2d 814, 824 (2d Cir.1990) (prosecutor did not violate *Brady* requirements by failing to reveal that lead witness was receiving psychiatric counseling, where prosecution was not aware the witness was receiving treatment).

Upon a thorough review of the submitted documentation, this Court concludes that the Southern District was unaware of the Conte–Gravano heroin scheme prior to May 18, 1993. James Comey, the former lead Government Attorney for the trial of this case, states in his affidavit to this Court, that upon review of prior testimony of Gravano, there was no reference to the Conte–Gravano heroin scheme. Affidavit of James Comey, Esq., dated October 21, 1993 ("Comey Affidavit") at ¶ 11. Comey also states that in meetings with the Eastern District, the issue of such a scheme never arose or was otherwise addressed. In fact, Conte's name was mentioned only rarely, so much so that only one AUSA remembered the name being mentioned. *Id.* at ¶ 6. Furthermore, a review of writings between the Southern and Eastern Districts did not reveal any information about the Scheme.[3]

Upon learning of the Scheme on May 18, 1993, Comey attempted to discover what was known throughout the Southern District regarding the Scheme. On May 25, 1993 Comey wrote a letter to this Court and subsequently, through oral presentation, informed this Court that, prior to May 18, 1993, the date of the aforementioned newspaper article, the Southern District was unaware of the Scheme. Consequently, upon finding that the Southern District was unaware of the Scheme, this Court finds that there was not a *Brady* violation in this case.

Moreover, the defendants have failed to make a showing that there was a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Tinsley v. Kuhlmann,* 973 F.2d 163 (2d Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 1050, 122 L.Ed.2d 358 (1993) (citing *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)); *see, e.g., Locascio,* 6 F.3d at 949 (finding where Government witness has admitted to 19 murders when he had actually committed 22 or 23, the jury's knowledge of the additional murders would have had no effect on the witness' credibility because it would merely have been cumula-

---

**2.** In *Locascio,* 6 F.3d at 949, the Court stated "[w]e will not infer the prosecutors' knowledge simply because some other government agents knew about the report." (*citing, United States v. Quinn,* 445 F.2d 940, 944 (2d Cir.) (holding that knowledge on the part of one arm of the government does not imply knowledge by the prosecutor) *cert. denied,* 404 U.S. 850, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971). In *Locascio,* the Second Circuit addressed a situation analogous to the one before this Court. After the defendants had been convicted, an AUSA discovered an FBI report which contained uncorroborated allegations which contradicted statements made by a key government witness, Salvatore Gravano—the same witness as in the present case. The Second Circuit upheld the district court's denial of a motion for a new trial ruling that "the information was neither known to the prosecutorial team nor exculpatory in nature." *Id.* at 948–49. The district court reached its conclusions without a hearing, "relying on affidavits submitted by prosecutors denying that they had awareness of the allegations against Gravano." *Id.* at 949.

**3.** Additionally, this Court has reviewed, *in camera,* a redacted version of handwritten notes taken at a meeting held at the Department of Justice headquarters in Washington, D.C. on July 17, 1992. This Court finds that the contents of these notes are consistent with the Government's position that no one in the Southern District recalls any mention of Gravano's participation with Conte in a heroin scheme.

tive, and "[t]he addition of a few more allegations would not have materially affected the defense's cross examination of him"); *United States v. Helmsley*, 985 F.2d 1202, 1205–06 (2d Cir.1993) (finding that based on the substantial attack on the witness's credibility which had already been developed at trial, "the withheld evidence fail[ed] to create a reasonable doubt [about the witness's credibility] that did not otherwise exist"). Here, as in *Locascio*, the jury was well aware that Gravano had committed numerous crimes, among them murder. There has been no showing that the hearing of additional crimes, *i.e.*, a heroin trafficking scheme, would have caused the jury to reach a different result.[4]

### B. *Southern District's Knowledge of Exculpatory Evidence*

■ Defendants also claim that the Southern District was in possession of exculpatory materials which it did not disclose, namely that Gravano had discussed drug deals with a number of "captains" in the Gambino crime family, but had no such conversations with John Gambino. Even if the Southern District had knowledge that Gravano had conversations with other captains about specific instances of drug crimes, the fact that Gravano did not have such conversations with Gambino does not make such evidence exculpatory. The defendants base their argument in part on a statement by AUSA John Gleeson of the Eastern District that Gravano's testimony to this effect may have tended in part to exculpate John Gambino, and "was probably *Brady* material." See Gleeson Affidavit, attached as Government's Exhibit C ("Gleeson Affidavit") at ¶ 6.

■ This Court finds that such testimony by Gravano, discussing possible instances of innocent behavior by Gambino is not necessarily exculpatory. The Second Circuit has held that "a defendant may not seek to es-

tablish his innocence ... through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir.1990) (citing *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir.1978)). In *Scarpa*, the Second Circuit held that surveillance tapes that would reveal the absence of discussion of narcotics crimes, did not have to be disclosed. *Scarpa*, 913 F.2d at 1011. *See United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir.1978) (holding that employees charged with receiving illegal payments may not seek to prove their innocence by demonstrating that on other occasions they did not act improperly). Since a defendant cannot introduce evidence of innocent behavior on other occasions to prove his innocence, such testimony would not be exculpatory within the requirements of *Brady*.

Furthermore, the mere fact that Gravano had conversations with other members of the organization about narcotics trafficking and did not have such conversations with Gambino would not necessarily prove to be exculpatory. This is particularly true in light of the fact that the bulk of evidence regarding drug trafficking was provided by other witnesses.

For the above stated reasons, this Court finds that the Southern District did not withhold *Brady* material and accordingly finds no acts of misconduct to be present. Having failed to satisfy both prongs delineated in *Pavloyianis*, the defendants motion to bar a retrial hereby is denied.

### IV. *Dismissal of Charges*

Having found that the standards for establishing a double jeopardy claim based on prosecutorial misconduct have *not* been met, this Court declines the defendants' invitation to dismiss the charges by exercising its supervisory powers.

---

4. When these issues were first brought to the Court's attention, this Court took steps to allow the defendants to attempt to cure any possible prejudice. Notably, this Court provided the defendants with a number of opportunities to recall Gravano to the stand. This Court heard extensive discussions by defense counsel as to the issues now raised. The defendants could have recalled and cross examined Gravano as to the inaccuracies in his testimony, with the hope of damaging his credibility in the eyes of the jury. Since counsel declined the opportunity given by this Court to recall Gravano, this Court finds that the defendants have waived their claims of prejudice which they now attempt to raise.

### V. *Other Relief Requested*

The defendants have moved for additional relief in the form of the production of additional information relating to the issues discussed above.

First, the defendants request additional information related to the "Conte proffer". Based on the findings of this Court set forth above, the defendants' request is denied.

Second, the Defendant's have requested that this Court require AUSA Gleeson to identify all the Southern District prosecutors to which he imparted the information contained in his affidavit. Based on the conclusions reached above and the unnecessarily broad reaching nature of this request, the defendants' request to this effect is denied.

██ Third, the defendants have requested a hearing in this matter. The Second Circuit has held that no rule of law requires a hearing in the sort of case where the relevant fact can be ascertained from the record. *See Pavloyianis,* 996 F.2d at 1475. Here, as in *Pavloyianis,* this Court has presided over all the proceedings, reviewed all the affidavits, and "concluded that there was 'not the slightest indication or evidence that the trial prosecutor anticipated an acquittal.'" *Id.* at 1475. Accordingly, the defendants request for a hearing is denied.

Fourth, the defendants have requested the production of a copy of the letter [memorandum] of July 1992, cited by Mr. Gleeson along with all other communications between the Eastern District and the Southern District prior to June 4, 1993 regarding this matter. The Government has indicated that there is an internal Eastern District memorandum relating to these matters, and a corresponding response from the Southern District. This Court is mindful of the importance of the confidentiality of attorney work product. *See* Fed.R.Crim.P. 16; Fed. R.Crim.P. 6(e). *See e.g., United States v. Nobles,* 422 U.S. 225, 238–39, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) (applying confidentiality of attorney work product to criminal matters); *In the Matter of Grand Jury Subpoenas,* 959 F.2d 1158, 1166 (2d Cir.1992) ("disclosure of protected material will be compelled only in restricted circumstances.").

This Court has concluded that there was neither prosecutorial misconduct, nor a belief by the prosecution that acquittal was likely. Either one of these two findings alone would suffice to deny the defendants' motion. Accordingly, the requisite circumstances for disclosure of confidential attorney work product containing confidential grand jury material have not been demonstrated, and therefore, this Court sees no need to require the production of additional memoranda from the Southern and Eastern Districts.

### Conclusion

For the above stated reasons the defendants' motion is denied in its entirety.

SO ORDERED.