UNITED STATES of America

v.

John PAPAJOHN, et al., Defendants.

No. CR–91–1251 (S1) (DRH).

United States District Court,
E.D. New York,
Hauppauge Division.

March 18, 1994.

James Michael Merberg, Boston, MA, for defendant John Papajohn.

Zachary W. Carter, U.S. Atty., E.D.N.Y., Brooklyn, NY by Eric O. Corngold and Rob-

ert A. Feinberg, Asst. U.S. Attys., for the Government.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

In the above-referenced prosecution, Defendant John Papajohn is charged, in a one-count superseding indictment, with conspiracy to distribute and to possess with intent to distribute hashish, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Currently before the Court is Defendant Papajohn's motion to dismiss the indictment on the ground that further prosecution would violate the Double Jeopardy Clause of the Fifth Amendment. For the reasons set forth below, Defendant's motion is denied.

## Factual Background

The trial of Defendant Papajohn and one of his co-defendants, Robert Seyfert, commenced on November 1, 1993.[1] In its opening statement, the Government discussed the evidence that, it contended, would link Defendant Papajohn to the conspiracy. One such item of evidence was Papajohn's palmprint, which was found on a paper bag containing several thousands of dollars. (Tr. at 121.) This bag of currency had been delivered to a confidential informant as payment for a shipment of hashish. (Id.)

Counsel for Defendant Papajohn, James Merberg, also spoke of the palmprint during his opening statement. Contrary to the Government's contentions, Mr. Merberg suggested to the jury that the palmprint could not serve to link his client to the conspiracy because the Government's print expert would be unable to determine when or under what circumstances the palmprint had been placed on the bag. (Id. at 132.) In essence, Mr. Merberg suggested that the expert's testimony could not establish that Defendant Papajohn had handled the bag after it had been filled with currency.

In the early morning hours of November 2, 1993, the Government's print expert conducted an examination of the paper bag. During this examination, the expert utilized a new technique for detecting prints—a technique that had been developed approximately two months prior to the trial, but had not been available when the expert first examined the bag. Using this technique, the expert discovered Defendant Papajohn's fingerprints on the duct tape that had served to seal the currency inside of the bag. The discovery of the fingerprint was significant because, the Government contended, it would "show at least that Mr. Papajohn handled the bag after it was sealed up with the money in it." (Id. at 375.)

During the morning recess on November 2, the Government informed Mr. Merberg of the expert's discovery; and at the luncheon recess, the Government provided Mr. Merberg with an opportunity to meet with the expert, question the expert with regard to his proposed testimony, and review the proposed exhibits. (Id. at 373.)

On the following day, November 3, 1993, the parties brought the fingerprint evidence to the Court's attention. At that time, Mr. Merberg suggested that the newly discovered fingerprint evidence would conflict with the representations that he had made to the jury during his opening statement. (Id. at 383.) Such a conflict, he contended, would prejudice Defendant Papajohn (id.); and, therefore, the fingerprint evidence should be excluded under Federal Rule of Criminal Procedure 16(d)(2), or, in the alternative, the Court should declare a mistrial. (Id. at 370, 371, 384.)

In response, the Government contended that it had complied with Rule 16, asserting that "[a]s soon as the expert evidence was developed we informed the defense. There was no dilatory tactic." (Id. at 376.) Therefore, the Government argued, the fingerprint evidence should not be excluded. In response to the Court's concern that the conflict between Mr. Merberg's opening statement and the newly discovered fingerprint evidence may warrant a mistrial, the Government maintained that the evidence was admissible under Rule 16, and contended that

---

**1.** A detailed description of the facts leading to the arrests of the defendants in this case may be found in the Court's Memorandum and Order dated December 22, 1992. *United States v. Leonard,* 817 F.Supp. 286 (E.D.N.Y.1992): Familiarity with the December Order is assumed.

Defendant Papajohn would suffer no prejudice from the introduction of the fingerprint. (*Id.* at 378.).

After extensive oral argument, the Court denied defense counsel's motion to exclude the fingerprint evidence, finding that the Government had complied with the dictates of Rule 16. (*See id.* at 375–76.) In light of its decision regarding the admissibility of the fingerprint evidence, the Court granted defense counsel's motion for a mistrial, explaining that

> this was a very close call. I think it was addressed to my discretion. I think I could have permitted the government to proceed and to grant the defense any type of continuation they may need, give any type of limiting instruction that may be required to bring out the timing of this new information and so forth. But I felt that the better approach was to take the position which I believe Mr. Merberg indicated. He said that if the government intends to offer this ... [Defendant Papajohn is] entitled to a mistrial.

(*Id.* at 468.) Moreover, the Court emphasized that the Government had not engaged in any wrongdoing or misconduct:

> I don't want there to be any suggestion that the mistrial would be declared because of the inappropriateness of the government.... This is a situation where this case should be subject to retrial. This is a completely innocent mistake. This is a call that could go either way. I believe in the exercise of my discretion it should go in favor of the defense.

(*Id.* at 450; *see also id.* at 376, 446, 448, 468, 469.) Defendant Papajohn now moves to dismiss the indictment pursuant to the Double Jeopardy Clause and Due Process guarantees of the Fifth Amendment. (Def. Mot. at 4.)

### Discussion

■ It is well established that the Double Jeopardy Clause protects a criminal defendant from repeated prosecutions for the same offense. *Oregon v. Kennedy,* 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982) (citing *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976)). The Double Jeopardy Clause thus provides a criminal defendant with the " 'valued right to have his trial completed by a particular tribunal.' " *Id.* at 671–72, 102 S.Ct. at 2087 (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). However, as a general rule, where a defendant elects to forgo this "valued right" by moving for a mistrial, the principles of double jeopardy do not bar retrial. *See id.* at 673, 102 S.Ct. at 2088; *United States v. GAF Corp.,* 884 F.2d 670, 673 (2d Cir.1989); *United States v. Huang,* 960 F.2d 1128, 1133 (2d Cir.1992).

The Supreme Court has indicated, on a number of occasions, that where the Government has engaged in conduct "in order to goad the [defendant] into requesting a mistrial," there is a "narrow exception" to this general rule. *Kennedy,* 456 U.S. at 673, 102 S.Ct. at 2088; *see also United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *Dinitz,* 424 U.S. 600, 96 S.Ct. 1075; *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). Because the breadth of this exception had been the subject of some debate, the Court, in *Oregon v. Kennedy,* saw fit to "delineate the bounds" of the exception. *Kennedy,* 456 U.S. at 673, 102 S.Ct. at 2088.

The *Kennedy* Court explained that certain courts had read this exception broadly, concluding that retrial would be barred where the mistrial was prompted by the Government's "bad faith conduct" or "harassment." *Id.* at 674, 102 S.Ct. at 2089. It is far from clear that such a broad reading of the exception would aid criminal defendants as a class, for, as the Court explained,

> [k]nowing that the granting of the defendant's motion for mistrial would all but inevitably bring with it an attempt to bar a second trial on grounds of double jeopardy, the judge presiding over the first trial might well be more loath to grant a defendant's motion for mistrial. If a mistrial were in fact warranted under the applicable law, of course, the defendant could in many instances successfully appeal a judgment of conviction on the same grounds

that he urged a mistrial, and the Double Jeopardy Clause would present no bar to retrial. But some of the advantages secured to him by the Double Jeopardy Clause—the freedom from extended anxiety, and the necessity to confront the government's case only once—would be to a large extent lost in the process of trial to verdict, reversal on appeal, and subsequent retrial.

*Id.* at 676–77, 102 S.Ct. at 2090 (citation and footnotes omitted). A broad standard, then, might actually, as a procedural matter, operate to the detriment of defendants seeking a mistrial. Such a result would be inconsistent with the principles of the Double Jeopardy Clause, because "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *Kennedy,* 456 U.S. at. 676, 102 S.Ct. at 2089 (quoting *Dinitz,* 424 U.S. at 609, 96 S.Ct. at 1080).

The Court thus rejected an expansive interpretation of the exception, and instead chose to follow those cases that had suggested that the appropriate inquiry is upon the intent of the prosecution. By focusing upon intent, the courts are provided with a narrow, manageable standard, and the values implicit in the Double Jeopardy Clause are adequately protected. *See id.* 456 U.S. at 675–76, 102 S.Ct. at 2089–90. The Court held, therefore, that

> [o]nly where the governmental conduct in question is *intended* to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Id.* at 676, 102 S.Ct. at 2089 (emphasis added).

■ Thus, to properly determine whether the retrial of Defendant Papajohn should be barred, the Court must examine the intent of the prosecution. As the *Kennedy* Court explained, the "existence or nonexistence of intent" is to be inferred from the "objective facts and circumstances" surrounding the case. *See id.* at 675, 102 S.Ct. at 2089. A review of the relevant facts and circumstances in this case clearly demonstrates that the prosecution did not intend to goad the defendant into requesting a mistrial.

Courts in this Circuit have consistently noted that a compelling indication of the Government's intent is the absence of wrongdoing or misconduct. *See, e.g., United States v. Pavloyianis,* 996 F.2d 1467, 1475 (2d Cir. 1993) ("We ... see nothing in this record to suggest that the prosecutor engaged in *misconduct* with the intention of avoiding what he viewed as a likely acquittal.... [T]here is no indication he engaged in the type of conduct required to invoke the double jeopardy bar to retrial.") (emphasis added); *United States v. GAF Corp.,* 884 F.2d 670, 673 (2d Cir.1989) ("The circumstances here in no way constitute the kind of *misconduct* needed to sustain a double jeopardy claim under *Kennedy.*") (emphasis added); *United States v. Gollamudi,* No. CR–91–518, 1993 WL 32700, at *1 (E.D.N.Y. Jan. 3, 1993) ("in some instances, the *misconduct* of the prosecutor at the first trial will create an exception to double jeopardy waiver and will prevent a retrial") (emphasis added); *United States v. Gambino,* 838 F.Supp. 744, 746 (S.D.N.Y. 1993) (the court "must examine the objective facts and determine (1) if any misconduct was in fact present, [and] (2) if there were acts of misconduct, whether the misconduct was deliberate and committed with the anticipation that an acquittal was likely").

Similarly, the Second Circuit has recently indicated that the absence of wrongdoing or error, and the prompt disclosure of evidence that was discovered after opening statements had been delivered, are indications of prosecutorial intent. In *United States v. Millan,* 17 F.3d 14 (2d Cir.1994), multiple defendants were prosecuted for their alleged participation in a large-scale heroin distribution network. Three days after the trial began, the Government informed the district court that one of its primary witnesses, a police officer on the narcotics task force who had investigated the alleged network, had been arrested on narcotics-related charges. On certain of the defendants' motions, the district court declared a mistrial, explaining that the revelations regarding police misconduct had created an "untenable situation." *Id.* 17 F.3d at 17.

The Second Circuit rejected the double jeopardy claims of the defendants who had moved for a mistrial, affirming the district court's determination that the prosecution had not intended to provoke a mistrial. The Court explained that "[t]here is no indication that the Government actually was withholding any information.... Even if the Government was less than diligent in its investigation ... this negligence does not rise to the level of intentional conduct necessary to invoke the protections of the Double Jeopardy Clause." *Id.* 17 F.3d at 19.

As in *Millan* and the other above-cited decisions, this Court finds that the most compelling indication of the Government's intent is the absence of wrongdoing or error. As discussed below, the Government fully complied with Rule 16 of the Federal Rules of Criminal Procedure;[2] therefore, the Government did not intend to goad the defendant into seeking a mistrial.

According to Rule 16(a)(1)(D), upon the defendant's request, the Government is required to disclose any results or reports of scientific tests or experiments, the existence of which is known, or by the exercise of due diligence, may become known.[3] Although Defendant Papajohn had made requests for such materials prior to trial, the results of the fingerprint testing did not exist at the time of the requests, and thus could not have been disclosed to the defendant prior to trial. The Government recognized, however, that, under Rule 16(c), it was under a continuing duty to disclose promptly any such results or reports as they were discovered.[4] Thus, upon learning of the newly discovered fingerprint evidence, the Government immediately disclosed the evidence to Defendant Papajohn and provided defense counsel with an opportunity to interview the expert witness. In so doing, the Government fulfilled its obligations under Rule 16. The Court thus rejected Defendant Papajohn's contention that the evidence should be excluded under Rule 16(d)(2) for failure to comply with a discovery request.[5]

In reaching its decision, the Court repeatedly noted that the Government had committed no error and had not engaged in any wrongdoing. (*See, e.g.,* Tr. at 376 ("There is no question that [the Government] did anything wrong. You obviously proceeded consistent[ly] with your obligations as prosecutors...."); *id.* at 446 ("The prosecution ... ha[s] done absolutely nothing wrong. They have proceeded in an absolute[ly] professional fashion. This is not an area where they deliberately withheld evidence.").) Nor did defense counsel, at the time of trial, suggest that the Government had engaged in deliberate misconduct.[6] (*See, e.g., id.* at 384

---

**2.** Although certain amendments to Rule 16 went into effect on December 1, 1993, this Order discusses compliance with that version of the Rule in effect in November, 1993, at the time of trial.

**3.** The Rule provides, in relevant part, that

[u]pon request of a defendant the government shall permit the defendant to inspect and copy ... any results or reports of ... scientific tests or experiments ... which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

Fed.R.Crim.P. 16(a)(1)(D).

**4.** The Rule provides, in relevant part, that

[i]f, prior to or *during trial*, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, such party shall promptly notify ... the other party's at-

torney ... of the existence of the additional evidence or material.

Fed.R.Crim.P. 16(c) (emphasis added).

**5.** Federal Rule of Criminal Procedure 16(d)(2) provides, in relevant part, that

[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

**6.** At best, defense counsel suggested that the Government was negligent in failing to perform the fingerprint testing prior to trial, after the technology became available. *See* Tr. at 384, 470. As recognized in Defendant Papajohn's brief, however, "[t]he applicability of [the *Kennedy*] exception turns squarely on the ... prosecutor's intent. Negligence, even if gross, is insufficient." *United States v. Huang,* 960 F.2d 1128, 1133 (2d Cir.1992); *see also* Def. Mot. at 5.

("Quite honestly, I am not suggesting [that the Government] didn't deliver...."); *id.* at 470 ("I want to amplify it's not a question of the government holding back something.... I don't believe [the Government] intentionally delayed it.").) The record, along with the Government's compliance with the Federal Rules, thus demonstrates that the prosecution did not intend to provoke the defendant's request for a mistrial.

Despite these telling indications of the Government's intent, Defendant Papajohn identifies three factors that, he contends, reveal that the Government intended to provoke his request for a mistrial. First, he asserts that although the Government strongly resisted Papajohn's motion to exclude the fingerprint evidence, it failed to resist his motion for a mistrial. Such a failure to resist a motion for mistrial, Papajohn contends, is evidence that the Government intended to goad the defendant into moving for a mistrial. Def. Mot. at 5–7 (citing, *inter alia*, *Kennedy*, 456 U.S. at 681, 102 S.Ct. at 2092 (Powell, J., concurring); *United States v. Huang*, 960 F.2d 1128, 1134 (2d Cir.1992)). Although it is true that the Government consistently argued that the fingerprint evidence was admissible, the Government also maintained that the introduction of the fingerprint evidence would not result in prejudice warranting a mistrial. (Tr. at 378.) Thus, the first factor identified by Defendant Papajohn does not persuade the Court that it was the Government's intention to provoke the defendant into requesting a mistrial.

Defendant Papajohn also suggests that the Government's conduct served to deprive him of "primary control over whether the trial would be completed," thus demonstrating that the Government intended to provoke the request for a mistrial. Def. Mot. at 7–8 (citing *Kennedy*, 456 U.S. at 676, 102 S.Ct. at 2090). Papajohn contends that

> [t]he prosecutor's insistence on going forward with the evidence. ... left defense counsel with no other choice than to request a mistrial, an outcome of which the prosecutor was acutely aware.... By his unwavering insistence on using the challenged evidence, the prosecutor intention-

ally took away the defendant's control over seeking a mistrial.... This sequence of events, orchestrated by the Assistant United States Attorney, is precisely the intentional subversion of the Double Jeopardy Clause which the Fifth Amendment prohibits.

Def. Mot. at 10–11.

In essence, Papajohn suggests that *Kennedy* stands for the proposition that where the Government's conduct forces the defendant into the difficult choice between requesting a mistrial or proceeding with a trial that the defendant perceives as tainted by prejudicial error, double jeopardy should bar retrial. This argument misconstrues the holding of *Kennedy* and other Supreme Court decisions regarding double jeopardy. As fully explained above, *see* discussion *supra* at 5–7, the *Kennedy* Court took great pains to avoid a standard which would discourage trial judges from granting mistrials when the defendant feels that the Government's conduct is incurably prejudicial; and it was in this context that the Court emphasized that the defendant should retain control over whether the first trial would be completed. The Supreme Court has never suggested that the principles of double jeopardy should bar retrial where a defendant faces a difficult choice regarding whether or not to proceed with trial. Indeed, the Supreme Court has recognized that it will often be the case that where the Government's conduct prejudices the defendant, "the defendant may have little interest in completing the trial and obtaining a verdict from the first jury." *Dinitz*, 424 U.S. at 608, 96 S.Ct. at 1080. Even where prejudice has occurred, however, the defendant may "nonetheless desire 'to go to the first jury and, perhaps, end the dispute then and there with an acquittal.'" *Id.* (citing *Jorn*, 400 U.S. at 484, 91 S.Ct. at 557).

Thus, rather than establishing an exception to the general rule that would focus upon the difficult choice faced by the defendant, the *Kennedy* Court emphasized that the courts must focus upon the prosecutor's intent. Applying the holding of *Kennedy* to the facts of this case, the Court finds that the Government's mere desire to introduce incriminating, but admissible, evidence cannot

be read as an intent to goad the defendant into moving for a mistrial. The Government's "insistence," then, on utilizing the challenged evidence was nothing more than an assertion of its rights under the Federal Rules, and cannot be viewed as an attempt to "take away" the defendant's control over whether the trial would be completed.

A final factor identified by Defendant Papajohn as relevant to the inquiry into the Government's intent is "the strength of the government's case and the prosecutor's need for a 'more favorable opportunity to convict.'" Def. Mot. at 7 (quoting *United States v. Singleterry (II)*, 683 F.2d 122, 125 (5th Cir.), *cert. denied*, 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 518 (1982)). Papajohn contends that "[w]ithout question, the government's case with regard to the defendant Papajohn would be strengthened by the admission of the 'newly discovered' fingerprint evidence at trial," and that "it can be inferred that the prosecutor had a strong motive to abort the defendant's trial in order to give the government the opportunity to properly notice Papajohn of the discovery and thereafter offer the additional fingerprint evidence at a retrial." Def. Mot. at 7.

As noted above, however, this is not a case in which the Government had engaged in some wrongdoing so as to preclude the evidence from being offered at the original trial. Instead, in this case, the Government was entitled, under the Federal Rules, to admit the fingerprint into evidence, *at the first trial or upon retrial. See* discussion *supra* at 10–11; *cf. United States v. Edmonson*, 962 F.2d 1535, 1546 (10th Cir.1992); *United States v. Atisha*, 804 F.2d 920, 925 (6th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). Indeed, it could be argued that the Government would have had a more favorable opportunity to convict at the first trial, for the fingerprint evidence would have "directly contradicted the defense theory of the case as set forth in defense counsel's opening statement." *See* Govt. Opp. Mem. at 10. Moreover, the Second Circuit has explained that "[t]he *Kennedy* exception is ... intended to prevent the prosecution from forcing a mistrial when things are going badly for it, in the hope of

improving its position in a new trial." *United States v. GAF Corp.*, 884 F.2d 670 (2d Cir.1989). As the Government correctly notes, Defendant Papajohn has not contended, nor may he contend, "that the trial was going badly for the government." *Id.* at 15.

In sum, the Court finds that although the factors identified by Defendant Papajohn may, in certain cases, be evidence of prosecutorial intent to provoke a mistrial, the intent of the Government in this case is best demonstrated by its compliance with the Federal Rules and the absence of prosecutorial misconduct or error.

### Conclusion

For the foregoing reasons, Defendant Papajohn's motion to dismiss the indictment is denied.

SO ORDERED.