Larry TINSLEY, Plaintiff–Appellee,

v.

Robert KUHLMANN, Warden, Sullivan Correctional Facility, Defendant–Appellant.

No. 1682, Docket 92–2150.

United States Court of Appeals, Second Circuit.

Argued June 8, 1992.

Decided Aug. 26, 1992.

David J. Mudd, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty., Marc Frazier Scholl, Asst. Dist. Atty., New York County, of counsel), for defendant-appellant.

Nicolas Swerdloff, New York City (Robert B. Funkhouser, Hughes Hubbard & Reed, of counsel), for plaintiff-appellee.

Before CARDAMONE, WINTER and MAHONEY, Circuit Judges.

CARDAMONE, Circuit Judge:

Robert Kuhlmann, Warden of the Sullivan Correctional Facility, appeals from a March 3, 1992 order of the United States District Court for the Southern District of New York (Lowe, J.) granting Larry Tinsley's petition for a writ of *habeas corpus.* The district court held that the state court's preclusion of all cross-examination of prosecution witness Officer David Fleming, the arresting officer, regarding his suspension from the police force for misconduct unrelated to the arrest, violated petitioner's rights under the Confrontation Clause of the Sixth Amendment and that this constitutional defect was not harmless. The district court also held that this error was compounded by the prosecution's failure to disclose the officer's disciplinary records in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Because we think any defect in petitioner's trial was harmless error, we reverse.

## BACKGROUND

On April 17, 1986 Larry Tinsley was charged in New York State Supreme Court, New York County, with two counts of attempted robbery and two counts of criminal possession of a weapon. Prior to trial he moved for disclosure of all potentially favorable information, including whether any of the law enforcement agents expected to be called by the prosecution had disciplinary records, pursuant to *Brady*, 373 U.S. at 86–88, 83 S.Ct. at 1196–97. The People stated in response that no *Brady* material was known to exist at that time and that any police disciplinary records were "not discoverable."

At a pretrial conference on August 7, 1986 Assistant District Attorney Jeffrey Zimmerman requested an adjournment of the trial date and informed the court, in the presence of Tinsley and his attorney, that the adjournment was needed because the arresting officer, David Fleming, "is out of town. He is having trouble with the police department and he is currently suspended by the police department. He is going to be reinstated sometime this month."

In a subsequent conference on September 9, 1986 the prosecutor asked the trial court to preclude Tinsley from cross-examining Officer Fleming concerning his suspension. Revealing that the officer had been suspended for pushing a handcuffed prisoner, the prosecution argued that "what he's charged with has no impact on truthfulness and credibility." The Assistant District Attorney contended, in addition, that the officer was merely a cumulative witness, as the most material aspect of his testimony was the discovery of a gun allegedly used in the robbery attempt, which discovery was also witnessed by the victim and the assisting officer. Holding that the officer's suspension was "totally irrelevant" since his testimony was "totally ancillary" and corroborated by other witnesses, the trial court denied petitioner's request that it review the officer's disciplinary records and granted the prosecutor's motion to preclude all cross-examination of Officer Fleming concerning his suspension.

At petitioner's jury trial, the principal witness against him was the complainant, Mark Jones. Jones testified that on the morning of March 30, 1986 he went to an apartment building in Manhattan to visit a friend. As he entered the building, he passed Tinsley, who was standing with his back against the wall on the staircase. Unable to locate his friend, Jones went downstairs, where between the second and third floors he again encountered petitioner. The victim testified that he was stopped by Tinsley, who pointed a worn, rusty, small gun at his stomach and said "Give me the crack you have." When Jones denied that he had any drugs, petitioner repeated his demand, at one point holding the gun about six inches from the victim's stomach and cocking the gun's hammer. After Jones convinced his assailant by turning his pockets inside out that he did not have any crack, he was allowed to leave the building. He testified that this attempted robbery lasted between ten and 15 minutes, and that during that time he was able to study Tinsley's clothing, face, and gun.

After he exited the building, Jones ran three blocks to the nearest police precinct. He approached two uniformed police officers, David Fleming and Daniel Donovan, who were outside, and he related to them the robbery attempt. He described his assailant as a black male, approximately 5'10", wearing a black shirt and black pants. He also described the weapon used as a small caliber revolver. The officers returned with the victim to the building and conducted a floor-by-floor search. Tinsley was apprehended on the fourth floor, and Jones identified him as the man who attempted to rob him. While Officer Donovan held Tinsley against the wall, Jones observed Officer Fleming search through a nearby pile of trash 15 feet away from where Tinsley was found. He saw Officer Fleming recover a gun, which he identified as the one brandished by his assailant during the commission of the crime.

Officer Fleming testified that he and Officer Donovan were approached by Jones outside of their precinct building, told of the robbery attempt, and given a description of the assailant and the gun. He

stated they went to the apartment building with the victim and as they were ascending the staircase he looked up and saw Tinsley on the fourth floor. The officer ordered Tinsley to "freeze," but the suspect disappeared from view. At that time, the three men started towards the fourth floor, where the officer again saw Tinsley. At this point, Tinsley advanced towards the three men, displaying his empty hands. Officer Fleming testified that after Officer Donovan secured the suspect against the wall, he recovered a small caliber handgun in a trash pile 15 feet from where Tinsley was apprehended. Officer Donovan corroborated this testimony, stating that he observed Officer Fleming recover a revolver from the pile of trash between two bags of garbage.

Tinsley, proceeding *pro se* with the assistance of his court-appointed legal advisor, testified in his own behalf. He stated that on the morning of March 30, 1986 he was driving his cab looking for a fare when a woman flagged him down and requested that he pick up her luggage, which was located on the fourth floor of the apartment building where Jones was accosted, and take her to LaGuardia Airport. He testified that he was attempting to retrieve the woman's luggage at the time he was found on the fourth floor of the building.

On September 16, 1986, the jury found Tinsley guilty of all counts. On October 15, 1986, the state court found Tinsley to be a persistent violent felony offender and sentenced him to concurrent indeterminate terms of imprisonment of 25 years to life on each of the counts. On direct appeal, Tinsley claimed, *inter alia*, that the trial court violated his constitutional rights under the Confrontation Clause of the Sixth Amendment by prohibiting cross-examination of Officer Fleming concerning his suspension. In addition, Tinsley claimed that the prosecution violated *Brady*, 373 U.S. 83, 83 S.Ct. 1194, by not providing him with Officer Fleming's disciplinary records. His conviction was unanimously affirmed without opinion, *People v. Tinsley*, 150 A.D.2d 992, 542 N.Y.S.2d 1002 (1st Dept.1989), and leave to appeal was denied, *People v. Tins-*

*ley*, 74 N.Y.2d 820, 546 N.Y.S.2d 578, 545 N.E.2d 892 (1989).

On March 29, 1990 Tinsley filed a petition for a writ of *habeas corpus* in the Southern District of New York seeking to set aside his conviction on the basis of the same constitutional contentions raised on his direct appeal in state court. The district court authorized Tinsley to obtain internal police department records relating to Officer Fleming's suspension for purposes of his *habeas* appeal. These records disclosed that on June 21, 1986 Officer Fleming, apparently angered by a suspect's refusal to submit to alcohol testing, pushed the handcuffed prisoner off an eight inches high platform in the presence of three other officers. Officer Fleming reported to his superior that the prisoner "fell and injured himself." After an internal investigation, Officer Fleming was suspended for his role in this incident. After an independent investigation, the district attorney's office decided not to institute criminal proceedings against the officer.

## DISCUSSION

### I *The Confrontation Clause Claim*

■ The district court determined that the state court's preclusion of all cross-examination of Officer Fleming concerning his suspension from the police force for unrelated misconduct—including his statement evading responsibility for the incident—violated Tinsley's right to confrontation under the Sixth Amendment and that this constitutional error was not harmless. We need not decide whether the district court was correct in finding Tinsley's Sixth Amendment rights violated by the restricted nature of the cross-examination of this witness because any such violation was harmless error. *See United States v. Simmons*, 923 F.2d 934, 944 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991).

■ A Confrontation Clause violation must be deemed harmless if, "assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the

error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). *See also Jones v. Berry*, 880 F.2d 670, 673–74 (2d Cir.1989); *United States v. Towne*, 870 F.2d 880, 886–87 (2d Cir.), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989). In conducting this analysis, we must consider (1) how important the witness' testimony was to the prosecution's case, (2) whether the testimony was cumulative, (3) whether other evidence in the record corroborated or contradicted the witness on relevant matters, (4) whether other cross-examination of the witness was permitted and the extent of it, and (5) what effect the testimony would have on proof of defendant's guilt. *See Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

Applying these factors to the present case, the state trial court's restriction on the cross-examination of Officer Fleming did not prejudice petitioner. The importance of the officer's testimony to the prosecution's case was minimal. His statement as to the retrieval of the gun did not in itself implicate Tinsley; instead it was clearly ancillary to that of the victim, who described the robbery attempt, identified petitioner as the man who tried to rob him, and identified the gun recovered by the officer as the one brandished by Tinsley during the attempted robbery. This testimony by the victim, a security guard familiar with weapons, provided strong evidence of Tinsley's guilt. The officer's testimony on this point also was fully corroborated by the assisting officer, who testified that he witnessed the recovery of the gun by Officer Fleming, so that the latter's testimony on this point was merely cumulative. Moreover, Officer Fleming was extensively cross-examined with respect to all other material aspects of his testimony. Finally, cross-examination on this collateral matter would not have seriously weakened the prosecution's strong proof of Tinsley's guilt. We thus find that any infringement of Tinsley's Sixth Amendment right to confront this witness was harmless beyond a reasonable doubt.

## II  *The* Brady *Material Claim*

█ The district court also concluded that the prosecution's failure to provide Tinsley with Officer Fleming's disciplinary records violated his right to obtain impeachment evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Even assuming the district court was correct in finding that the officer's disciplinary records constituted discoverable *Brady* material, failure to disclose such evidence constitutes a due process violation "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (Blackmun, J.) (plurality opinion); *id.* at 685, 105 S.Ct. at 3385 (White, J., concurring in judgment) (quoting plurality opinion). A reasonable probability in this context means " 'a probability sufficient to undermine confidence in the outcome,' " one that might make the difference between a verdict of guilt and innocence. *Id.* at 682, 105 S.Ct. at 3383 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. at 2052, 2068, 80 L.Ed.2d 674 (1984)). Based on the cumulative nature of Officer Fleming's testimony against petitioner and the strong evidence against Tinsley provided by the victim, we cannot suppose that had the prosecution disclosed the officer's disciplinary records there is a reasonable probability they would have changed the result of the trial. *See United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976). Thus, any *Brady* violation that may have occurred constituted harmless error in this case.

## CONCLUSION

Accordingly, the order of the district court granting petitioner a writ of *habeas corpus* is reversed.