Ricky GALVIN, Petitioner,

v.

Walter KELLY, Superintendent, Attica
Correctional Facility, Respondent.

No. 97–CV–0160E(F).

United States District Court,
W.D. New York.

Jan. 7, 2000.

Ricky Galvin, Attica, NY, pro se.

Eliot L. Spitzer, Attorney General, State of New York, Jerry McGreir, Sr., Assistant Attorney General, of counsel, Buffalo, NY, for respondent.

## MEMORANDUM and ORDER

ELFVIN, Senior District Judge.

By order dated August 6, 1997, the undersigned referred this action to United States Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration thereof Judge Foschio filed a Report and Recommendation ("the R & R") May 18, 1999 recommending dismissal of the pro se Petition by Galvin brought under 28 U.S.C. § 2254 for a writ of habeas corpus. Presently before this Court are Petitioner's Objections to the R & R, which were filed pursuant to 28 U.S.C. § 636(b)(1)(C), Rule 72(b) of the Federal Rules of Civil Procedure ("FRCvP") and Rule 72.3(a)(3) of the Local Rules of Civil Procedure ("LRCvP"). For the reasons stated below, Petitioner's Objections will be overruled, the R & R will

be adopted in its entirety and the instant petition dismissed.

■ LRCvP 72.3(a)(3) requires that objections to a magistrate judge's report and recommendation "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with this requirement justifies a dismissal of the objections. *Camardo v. GM Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992). The objecting party also may not raise arguments not priorly submitted for the magistrate judge's consideration. *Abu–Nassar v. Elders Futures, Inc.,* 88 Civ. 7906, 1994 WL 445638, at *4 n. 2 (S.D.N.Y.1994). Pursuant to 28 U.S.C. § 636(b)(1)(C) and FRCvP 72(b), the undersigned must conduct a de novo review of any portion of the R & R to which specific written objection has been made and may "accept, reject or modify, in whole or in part, the findings or recommendations" therein. 28 U.S.C. § 636(b)(1)(C). Additional evidence may be received or the undersigned may refer the matter back to Judge Foschio with instructions. *Id.;* FRCvP 72(b).

It is pertinent to note here that Petitioner does not specifically object to any portion of the R & R and instead makes four broad assertions. Firstly, Petitioner objects to the "depth of analysis given the petition." Petitioner's Objections ¶ 1. Secondly, Petitioner objects to Judge Foschio's "allegation" that the record below is not factually inadequate. *Id.* at ¶ 2. Thirdly, Petitioner maintains that *Daye v. Attorney Gen. of New York*[1] demands an analysis not fully afforded the petition. *Id.* And fourthly, Petitioner objects to the R & R on the basis that such is not "grounded in fact and law in view of *The Rules Governing 28 U.S.C. § 2254 Cases*

[in] *the United States District Courts* and *Fay v. Noia*[2]." *Id.* at ¶ 3.

Even considering Petitioner's pro se status, the first and fourth objections simply do not satisfy any notion of specificity or, for that matter, are not grounded in such sound legal authority that this Court may justify a de novo review. Accordingly, they will not be considered. Petitioner's second objection to the R & R, moreover, is likewise unavailing in light of the fact that Petitioner did not request an evidentiary hearing until filing the instant objections. Entertaining such an objection would "unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments"— *Abu–Nassar,* at *4 n. 2—and it will not be considered. It is relevant to add here that the undersigned will not order *carte blanche* an evidentiary hearing based on some amorphous accusation that the record below is factually inadequate. To warrant a hearing, Petitioner must set forth specific facts supported by competent evidence which would entitle to him to relief. *Machibroda v. United States,* 368 U.S. 487, 494–495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *United States v. Aiello,* 814 F.2d 109, 113 (2d Cir.1987); *Ramirez v. Headley,* 98 Civ. 2603, 1998 WL 788782, at *10 (S.D.N.Y.1998); *see also* 28 U.S.C. § 2254(e) (a state court's factual determination is presumed to be correct unless one of the specified conditions in section 2254(e) is met). In his objections, Petitioner sets forth no specific facts that would warrant an evidentiary hearing.

■ The only objection that could properly be considered an objection to the R & R—if the undersigned should overlook its otherwise gross lack of specificity—is Petitioner's averment that the magistrate judge did not properly consider *Daye* when assessing the merits of his habeas

---

1. 696 F.2d 186, 192 (2d Cir.1982) (en banc).

2. 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), *overruled by Coleman v. Thompson,*

501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

corpus application. *Daye* holds that the exhaustion requirement in the habeas context is not satisfied unless the federal claim was "fairly presented" to the state courts and rested on essentially the same legal doctrine asserted in the federal petition. *Daye*, at 191–192. This requires that a federal court be alert to and consider constitutional claims not explicitly presented to the state courts but nevertheless advanced thereto as "the nature or presentation of the [claims were] *** likely to alert the court to the claim's federal nature." *Id.*, at 192. As this reasoning applies to the instant matter, it appears to be Petitioner's position that—even though chapter and verse of the Constitution may not have been cited—Judge Foschio did not properly consider all of the possible constitutional dimensions of his claim. *Id.* at 194. It suffices to state here that the R & R, while not explicitly referring to *Daye*, belies Petitioner's contention. In no uncertain terms, the R & R gives full consideration to Petitioner's litany of claimed constitutional deprivations, including those asserted under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. Accordingly, Petitioner's third objection fails.

It is hereby **ORDERED** that Magistrate Judge Foschio's Report and Recommendation is adopted in its entirety and that the Petition for a writ of habeas corpus is denied and that this case shall be closed.

### REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

Petitioner initiated this action on March 11, 1997 requesting habeas corpus relief under 28 U.S.C. § 2254. The matter was referred to the undersigned by the Hon. John T. Elfvin on August 6, 1997 for report and recommendation.

### *BACKGROUND*

Petitioner, Ricky Galvin ("Galvin"), was arrested on January 18, 1990 in connection with a homicide and robbery which occurred earlier that day at Lockwood's Bar in Sodus, New York. Galvin was subsequently charged in a three-count indictment with Murder in the Second Degree (N.Y.Penal Law § 125.25(3) (McKinney 1998)) [1] ("felony murder"), Robbery in the First Degree (N.Y.Penal Law § 160.15(3)), and Robbery in the Second Degree (N.Y.Penal Law § 160.10(1)).

At a preliminary hearing held on January 24, 1990 in Sodus Town Court, the court determined that Galvin should be held pending a presentation of the matter to the Grand Jury.

A pre-trial **Huntley** [2] and suppression hearing was held on May 17, 1990 subsequent to which the court held that oral and written statements made by Galvin with regard to the crime were voluntary.

A three-day jury trial commenced in Wayne County Court on August 21, 1990 and concluded on August 23, 1990. Hon. Maurice E. Strobridge, Wayne County Court Judge, presided over the trial. Galvin was represented at trial by Assistant Wayne County Public Defender George A. Power. Wayne County District Attorney, Stephen R. Sirkin, prosecuted the case. On August 23, 1990, the jury returned a verdict of guilty on all three counts. On October 17, 1990, Galvin was sentenced to an indeterminate term of fifteen years to life.

Galvin, represented by Willie R. Fenton, Esq., appealed his conviction to the New York Supreme Court Appellate Division, Fourth Department, arguing that the evidence presented at trial was insuffi-

---

1. Unless otherwise indicated, all references to New York Penal Law are to McKinney 1998.

2. In a pretrial **Huntley** hearing, the trial judge considers the voluntariness of state-

ments made by the defendant. *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

cient to support his conviction of felony murder and that trial counsel erred in failing to request that the jury be given an alternative instruction on criminal facilitation under N.Y.Penal Law § 115.00. Galvin's conviction was unanimously affirmed on February 5, 1993. *People v. Galvin,* 190 A.D.2d 1023, 594 N.Y.S.2d 1005 (4th Dep't.1993). Leave to appeal to the Court of Appeals was denied on May 5, 1993. *People v. Galvin,* 81 N.Y.2d 1014, 600 N.Y.S.2d 202, 616 N.E.2d 859 (1993).

Galvin then moved before the Appellate Division, Fourth Department, pursuant to N.Y.Crim.Proc.Law § 440.10, to have his judgment vacated based on newly discovered evidence. That request was denied on June 24, 1996 by Wayne County Court Judge Dennis M. Kehoe.

On May 11, 1997, Galvin filed the instant petition seeking habeas relief on four grounds including (1) his direct appeal was denied by the appellate court in a vague and insufficient manner, (2) *People v. Eastman,* 85 N.Y.2d 265, 624 N.Y.S.2d 83, 648 N.E.2d 459 (1995),[3] requires reversal, (3) an exculpatory statement was wrongfully withheld, and (4) ineffective assistance of counsel.

Respondent's Answer was filed on August 4, 1997, accompanied by the state court records and a Memorandum of Law. On August 12, 1997, Galvin filed a Reply/Traverse in response to the Answer. Respondent filed a Supplemental Affirmation/Declaration on August 13, 1997 and a further Supplemental Declaration/Affirmation on August 14, 1997.

Based on the following, the petition should be DISMISSED.

## FACTS

Galvin testified at trial consistent with a statement he gave, following his arrest on January 18, 1990, to New York State Police Criminal Investigator Orlando Gonzalez which was read into evidence at trial. According to Galvin, on the evening of January 17, 1990, Steve Denner was tending bar at Lockwood's Bar ("the bar") located at 68 Ridge Road East in Sodus, New York. (T. 66–67, 202).[4] Galvin and his friend, Leroy Smith ("Smith"), paid someone to drive them to the bar, arriving there at approximately 9:30 P.M. Galvin entered the bar to look for a friend of his, and ordered a beer. (T. 152, 202). When Galvin entered the bar, he was armed with a concealed knife which he carried for protection. (T. 200–201). Although Galvin usually wore his knife on a belt, before entering the bar he had removed the knife from his belt and concealed it in his coat so that no one would think he was "looking for trouble." (T. 235, 251–53). Galvin had known Denner for about six months. (T. 202–203). Smith remained outside the bar where he waited in the car in which they had been driven to the bar. (T. 152, 204). After a few minutes, Smith joined Galvin in the bar. (T. 152, 204).

Over the next several hours, Galvin drank beer and shot pool with Denner and Kenneth A. Thebert, another bar patron. (T. 153–54, 205). Smith also drank beer, but did not shoot pool. (T. 65, 126, 129, 153)

As one point during the evening, Smith told Galvin, "I'm going to get pay," and asked Galvin if he were "down." (T. 157–58, 206). Galvin understood Smith's statements to mean that Smith intended to steal the money from the bar's cash register and wanted to know if Galvin wished to

---

**3.** *Eastman, supra,* holds that the Supreme Court's decision in *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987) that the Confrontation Clause is violated where a defendant's own incriminating statement which corroborates a co-defendant's confession is introduced at a joint trial is retroactively applicable on collateral review in the state courts.

**4.** "T." references are to the page number of the transcript of Galvin's state court trial. A copy of that transcript is attached as Exhibit A to the Answer.

participate. (T. 157–58, 207–208). Later, Smith asked Galvin if he could borrow his knife. (T. 154, 210). Galvin gave Smith the knife and continued to shoot pool. (T. 154, 210). Galvin maintains that he did not inquire as to why Smith wanted to borrow the knife and had no idea that Smith intended to use the knife to "cut" Denner. (T. 158, 210). Galvin also stated that he was not drunk when he gave his knife to Smith (T. 238) and that he later "forgot" he had given his knife to Smith. (T. 154).

Galvin, who lost between $4 and $10 playing pool with Denner and Thebert, (T. 154, 214), got into an argument with Denner over the game rules which caused Denner to temporarily close the pool table around midnight. (T. 50–51, 154, 211–12). After Galvin stopped playing pool, he bought another beer. (T. 215). In total, Galvin drank three draft beers and one shot of liquor. (T. 215).

Although Thebert sometimes stayed at the bar until closing time, on that night he left earlier. Around 2:00 A.M. on January 18, 1990, only Galvin, Smith and Denner remained in the bar. (T. 154). According to Galvin, he planned to stay at the bar until closing time as Denner usually gave him a ride home. (T. 154, 215). Smith asked Denner what time he was closing and Denner replied that he could stay open as long as he wanted. (T. 154–55, 215).

Galvin decided to leave, put on his coat and began walking toward the double set of doors which led outside the bar. (T. 155, 215). Smith stayed in the bar, standing near the bathrooms. (T. 155). As Galvin exited the bar, Denner called out that he had something to tell Galvin and Smith. (T. 155, 216). Galvin turned and walked back into the bar. (T. 155, 216). Upon reaching the second set of doors which led directly to the bar, Galvin saw Smith "hit" Denner in the neck. (T. 155, 216). Galvin at first believed that Smith had punched Denner, and then noticed that Smith was wielding Galvin's knife. (T. 155, 216).

Galvin maintains that Denner said to Smith, "you killed me," stumbled backward and fell. (T. 155, 217). Galvin said to Smith, "you killed him," ran out of the bar, and went up a hill located behind the bar. (T. 155, 217). Smith ran outside the bar and into the middle of the road. (T. 155, 217–18). Galvin again yelled to Smith that Smith had killed Denner. (T. 155–56, 218).

According to Galvin, Smith walked up the hill on which Galvin stood and offered to split with him the money which Smith had taken from the bar's cash register. (T. 156, 218). Galvin did not respond to the offer and Smith explained that he had to kill Denner because Denner knew Smith. (T. 156, 219). Smith then asked Galvin if he were going to tell what Smith had done. (T. 156). Galvin stated that he would not as he did not know where the knife was. (T. 156). Galvin asked Smith where the knife was and Smith replied that he threw it across the road in front of the bar. (T. 156, 219). Smith then gave Galvin the pouch which had held the knife. (T. 156, 219). Galvin threw the pouch on top of the hill and reminded Smith that Smith had killed Denner. (T. 156).

Galvin and Smith then walked along the railroad tracks to Smith's sister's home in Sodus, New York. (T. 156). Upon arriving at the house, Galvin and Smith entered Smith's sister's car which was parked in front of the house. (T. 156). Smith pulled approximately $150 from his coat and gave Galvin $70. (T. 156). Smith and Galvin then entered his sister's house. (T. 156–57). Once inside, Galvin slept for two hours before Smith woke him and told him he had to leave. (T. 157). Galvin went to the house next door where Tim Sanders lived and waited there about five minutes before he left and walked home to his mother's house where he arrived around 7:30 A.M. (T. 157). Galvin slept until 11:30 A.M. and then went to his girlfriend's house in Lyons, New York. (T. 157, 222–

23). Galvin paid Bobby Green $7 to drive him to Lyons. (T. 157). On the way, Galvin and Green stopped on York Settlement Road where Galvin purchased a $10 bag of marijuana with the money Smith had stolen from the bar. (T. 157, 223). Galvin and Green also stopped at a grocery store where Galvin bought a toothbrush and some meat. (T. 157, 223). Upon arriving at his girlfriend's house at 1:00 P.M., Galvin told her what had happened. (T. 157, 223–24). Galvin maintains that he planned to turn himself in to the police, but he was arrested before he was able to do so. (T. 224–25).

At 8:30 P.M. on January 18, 1990, New York State Police Criminal Investigators Gonzalez and David S. Gould picked up Galvin at his girlfriend's home in Lyons, New York. (T. 122, 159). Galvin commenced the statement he gave to Officer Gonzalez at 11:50 P.M. on January 18, 1990, and ended at 1:30 A.M. on January 19, 1990. (T. 150).

Smith was also arrested on January 18, 1990 in connection with Denner's murder. Following his arrest, Smith gave two statements a couple of hours apart on January 18, 1990.[5] Although Smith indicated in both statements that it was Galvin's idea to rob Denner, in Smith's first statement, which was not presented at trial, Smith maintains that it was Galvin who stabbed Denner. In his second statement, however, Smith admits that he stabbed Denner.

At trial, Officer Gould read from a redacted version of Smith's second statement although Smith did not testify at Galvin's trial.[6] (T. 129). According to Smith's redacted statement, he and Galvin entered the bar on January 17, 1990 at 10:00 P.M. Galvin spent most of that evening playing pool while Smith drank various alcoholic beverages. (T. 129). By 1:30 A.M., January 18, 1990, only Galvin, Smith and Denner remained in the bar where they contin-

ued to consume alcoholic beverages. (T. 130).

As redacted, Smith's statement indicates that Denner grabbed his arm and Smith pulled the knife which he had borrowed from Galvin earlier in the evening out of his coat pocket. (T. 130). Smith stabbed Denner in the neck with the knife and Denner cursed at Smith and stated "you killed me." (T. 130). Denner then fell onto a bar stool. (T. 130). Smith went behind the bar, removed approximately $100 from the cash register, and ran out of the bar. (T. 130). Outside the bar, Smith threw Galvin's knife, with which he had stabbed Denner, toward the street. (T. 130).

According to Smith's redacted statement, Smith went to his sister's house where he stayed until 10:30 A.M. (T. 130). He then went next door to the Sanders residence and where he stayed with Willie Sanders until Willie's sister and father, Cleophus Sanders, arrived. (T. 130). Smith then went to Cleophus Sanders's house, next door to his sister's house, as he observed the police at his sister's house and wanted to confess. (T. 130). Smith was then taken to the Sodus police station where Smith confessed to the crime. (T. 130–31).

Philip L. Grant, the owner of the bar, testified at trial that he found Denner's body on the morning of January 18, 1990 at 7:45 A.M. (T. 66, 68–69). Grant observed that the cash register's drawer was open and empty. (T. 70). Based on sales from the previous night as indicated on the cash register's receipt tape, the drawer should have contained about $200. (T. 70–72, 74–75).

Timothy R. Bour, an investigator with the New York State Police, was called on January 19, 1990 to participate in the investigation of Denner's death by searching

---

**5.** Smith's commenced making his first statement on January 18, 1990 at 9:24 P.M. and finished it at 10:46 P.M. that same night. Smith's second statement was made begin-

ning at 11:30 P.M. on January 18, 1990 and concluded at 12:55 A.M. on January 19, 1990.

**6.** Smith was tried separately from Galvin.

for evidence. (T. 80–81). Bour found the knife which was later identified as the murder weapon in a wooded area on the side of a road behind the bar which led westerly to Sodus. (T. 82–84, 92). A leather knife sheaf was discovered approximately 1000 feet to the west of where the knife was found, closer toward Sodus. (T. 88–91).

Dr. Nicholas Forbes, Monroe County Medical Examiner testified at trial that he autopsied Denner's body on January 19, 1990. (T. 188). According to Dr. Forbes, blood alcohol tests indicated that Denner was legally drunk at the time of his death. (T. 190–91). Dr. Forbes determined that Denner's death was caused by a stab wound to the left neck area which penetrated 3½ inches, severing the innominate vein which caused Denner's left lung to collapse. (T. 189). There was no evidence of any wounds which Dr. Forbes could characterize as "defensive." (T. 192).

Galvin was convicted by a jury on October 17, 1990 of Murder in the Second Degree, Robbery in the First Degree and Robbery in the Second Degree. In connection with that conviction, Galvin received three indeterminate sentences of 1½ years to 4½ years, 2 to 6 years and 15 years to life, said sentences to run concurrently. Galvin appealed his conviction to the Appellate Division, Fourth Department arguing that the trial evidence was insufficient to establish criminal liability or to sustain a felony murder conviction, as well as failure to instruct the jury as to a lesser offense. Galvin's convictions were unanimously affirmed on February 5, 1993 and leave to appeal to the Court of Appeals was denied on May 5, 1993.

Galvin then moved before the Appellate Division, Fourth Department, pursuant to N.Y.Crim.Proc.Law § 440.10, to have his judgment vacated based on newly discovered evidence. Specifically, Galvin argued that the trial court erroneously admitted into evidence Smith's redacted statement although Smith did not testify and thus was not available for cross-examination, that trial counsel's stipulation to the admission of such statement into evidence constituted ineffective assistance of counsel, and that a newly discovered statement given by Cleophus Sanders was exculpatory and, as such, should have been provided to Galvin in response to his request for *Brady* and *Rosario* materials. That request was denied on June 24, 1996. On May 11, 1997, Galvin filed the instant petition for habeas relief.

### DISCUSSION

In the instant petition, Galvin asserts four grounds for relief including: (1) the appellate court did not specify the reasons why his direct appeal was denied, (2) *People v. Eastman*, 85 N.Y.2d 265, 624 N.Y.S.2d 83, 648 N.E.2d 459 (1995), requires reversal, (3) an exculpatory statement was wrongfully withheld, and (4) ineffective assistance of counsel. Although not stated with the desired degree of specificity, a careful reading of Galvin's petition indicates he is challenging his conviction of felony murder under New York Penal Law § 125.25(3) which provides that a person may be found guilty of murder in the second degree when, in the course of and in furtherance of a robbery, or immediate flight therefrom, he or another robbery participant, causes the death of a person other than a participant. An affirmative defense to felony murder is that the defendant did not intend the commission of the homicidal act, was not armed, had no reason to believe any other participant was armed and no reasonable ground existed to believe another participant intended to engage in conduct likely to result in death or serious physical injury. Significantly, although Galvin admits being in the bar with Smith and Denner when Smith stabbed Denner, Galvin maintains that he was not a participant in any crime and he had no knowledge that Smith borrowed Galvin's knife with the intention of using it to rob Denner.

■ In reviewing a state prisoner's petition pursuant to 28 U.S.C. § 2254, a dis-

trict court makes an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution or any laws or treaties of the United States. *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). A state petitioner's federal habeas corpus petition may be dismissed if the petitioner has not exhausted available state remedies as to any of his federal claims, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), although under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(b)(2), a federal court is permitted to deny a state prisoner's habeas corpus petition on the merits even though the prisoner has not exhausted available state remedies.

In the instant case, no state remedy exists with regard to Galvin's first ground that the Appellate Division's affirmance of his conviction was vague and insufficient and it is undisputed that Galvin has exhausted state remedies as to his remaining grounds for habeas relief. Answer, ¶ 10. Accordingly, Galvin's petition presents only exhausted claims and jurisdiction in this court therefore exists.

In reviewing habeas petitions, federal courts do not function as appellate courts to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts, rather, the court determines whether the proceedings in the state court amount to a violation of federal constitutional rights. *Coleman, supra.* Federal review of a state court conviction is limited to errors of federal constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). A state prisoner applying for a writ of habeas corpus under 28 U.S.C. § 2254 is not entitled to an evidentiary hearing by the federal court, but the granting of a hearing is within the discretion of the federal district court. *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 4–5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (citing *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). The state court's determination, however, is presumed to be correct unless one of the specified conditions pursuant to 28 U.S.C. § 2254(e), formerly 28 U.S.C. § 2254(d), is found to exist or unless the federal habeas court concludes that the relevant state court determination is not fairly supported by the record. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Absent these factors, the burden rests on the petitioner to establish, by clear and convincing evidence, that the factual determination is erroneous. *Sumner, supra.*

■ It is within the court's discretion whether an evidentiary hearing is necessary. *Pagan v. Keane,* 984 F.2d 61, 63 (2d Cir.1993). The court is in possession of the state record as relevant to Galvin's claims, including the trial transcript and challenged statements, along with the all of the legal memoranda which were before the state courts with regard to Galvin's direct appeal and § 440.10 motion. Galvin has not requested that the court conduct an evidentiary hearing prior to resolving his claims for relief and has not challenged the record below as factually inadequate. Accordingly, the court in its discretion finds an evidentiary hearing unnecessary.

## 1. *Sufficiency of Appellate Division's Denial*

■ Galvin claims that the Appellate Division's decision denying his direct appeal is "vague and insufficient" as it fails to specify the precise reasons for the denial. Petition, ¶ 12A. Galvin argued on his direct appeal to the Appellate Division that the trial evidence was insufficient to support the jury's verdict that Galvin was guilty of felony murder and that the trial judge erred in failing to instruct the jury on an alternative offense of criminal facilitation. Such claims are reviewable under the Due Process Clause of the Fourteenth

Amendment. *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). The Appellate Division's affirmance of Galvin's conviction was accompanied by a two-sentence opinion, the first sentence stating the asserted grounds for the appeal and the second sentence indicating that the trial court properly denied Galvin's request for the alternative jury instruction. *People v. Galvin*, 190 A.D.2d 1023, 594 N.Y.S.2d 1005 (4th Dep't.1993).

■ "[W]hen a defendant presents a claim to the Appellate Division, and the Appellate Division affirms without opinion, a federal court should presume that the Appellate Division considered the constitutional claim and decided it on the merits." *Parron v. Quick*, 869 F.2d 87, 90 (2d Cir. 1989) (holding in the context of a habeas petition asserting an ineffective assistance of counsel claim based on an alleged speedy trial violation that although the Appellate Division affirmed petitioner's conviction without opinion, certain presumptions could be made as to the nature of the summary affirmance, including that the constitutional claim had been decided on its merits rather than dismissed based on procedural default). Accordingly, in light of *Parron, supra*, the court presumes that the Appellate Division reached the merits of Galvin's alleged constitutional violations. Significantly, Galvin cites no law requiring an Appellate Division decision in the form of a lengthy discourse and the court's research reveals none. Moreover, a convicted defendant has no constitutional right to appeal. *Ross v. Moffitt*, 417 U.S. 600, 610, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) ("while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the

State need not provide any appeal at all.") (citing *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894)). As the state's failure to provide a right to appeal cannot be a ground for habeas review, it follows that the Appellate Division's failure to specify its reasons for affirming Galvin's conviction also cannot be a basis for habeas review. Therefore, the petition should be DENIED on this ground.

**2. Admission of Statement by Non–Testifying Co–Defendant[7]**

Galvin asserts as his second ground for habeas review that *People v. Eastman*, 85 N.Y.2d 265, 624 N.Y.S.2d 83, 648 N.E.2d 459 (1995) requires reversal. Petition, ¶ 12B. In *Eastman, supra*, the New York Court of Appeals held that *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), where the Supreme Court held that introduction at a joint trial of a defendant's own incriminating statement which corroborates a co-defendant's confession violates the Confrontation Clause, applied retroactively on collateral review of an earlier conviction.

As a threshold matter, the court notes that there is no need to retroactively apply *Cruz*, decided in 1987, to Galvin's 1990 conviction. However, a liberal reading of Galvin's petition, as required under *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (instructing that pleadings of *pro se* litigants be liberally construed), demonstrates Galvin is challenging the validity of his conviction in light of a perceived violation of the Sixth Amendment's Confrontation Clause which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." Galvin specifically seeks habeas review of Judge Strobridge's ad-

---

7. As Smith's redacted statement was read into evidence without objection, the Confrontation Clause issue was not preserved for review. However, Galvin's § 440 motion, which was based on Smith's statement, was denied on its merits rather than on the basis that Galvin had procedurally defaulted on the issue and

Respondent has not challenged it on that ground. Accordingly, the issue has been exhausted for purposes of federal habeas review and, in the interests of completeness as well as to assist the reader in the discussion of Galvin's ineffective assistance of counsel claim, the court considers it.

mission at trial of a redacted statement made by co-Defendant Smith who did not testify at Galvin's trial. Petition, ¶ 12B.

Respondent argues that the cases relied on by Galvin in support of the alleged Confrontation Clause violation pertain only to statements by non-testifying co-defendants presented at joint trials which inculpated the defendant and which were received into evidence over the objection of defense counsel. Memorandum of Law in Opposition to Petitioner's Request for Habeas Corpus Relief filed August 4, .1997 (Docket Item No. 7) ("Respondent's Memorandum of Law"), at 3. However, as Galvin and Smith were tried separately, and as Power stipulated to ·admission of the subject statement into evidence, the instant case is outside the holdings of the cases on which Galvin relies. Respondent's Memorandum of Law at 3.

The Sixth Amendment Confrontation Clause guarantees a criminal defendant the right to cross-examine witnesses presented against him. *United States v. Kyles,* 40 F.3d 519, 526 (citing *Pointer v. Texas,* 380 U.S. 400, 406–407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)), *cert. denied,* 514 U.S. 1044, 115 S.Ct. 1419, 131 L.Ed.2d 302 (1995). "The right to confront and to cross examine witnesses is· primarily a functional right that promotes reliability in criminal trials." *Lee v. Illinois,* 476 U.S. 530, 539, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). When the witness is an accomplice whose testimony may implicate the defendant in the crime for which defendant is accused, the defendant· has a heightened interest in cross-examining the witness. *Kyles, supra,* at 526.

*Cruz* is an extension of the Supreme Court's holding in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), that a defendant is deprived of his constitutional rights under the Confrontation Clause of the Sixth Amendment when a co-defendant's confession which also implicates the defendant is introduced at their joint trial despite a jury instruction that the confession is to be considered only

against the co-defendant. Such confessions are hearsay, the credibility of which is considered inevitably suspect based on the co-defendant's strong motivation to implicate the defendant and exonerate himself, and their unreliability compounded by the co-defendant's failure to testify and thus not subject to cross-examination. *Bruton,* at 141–42, 88 S.Ct. 1620. In *Cruz,* the Supreme Court established that even where a defendant's and co-defendant's confessions "interlock," such interlocking "bears a positively inverse relationship to devastation [to the defense resulting from such statements]," particularly where the defendant seeks at trial to avoid the adverse effect of his earlier statement. *Cruz, supra,* at 192, 107 S.Ct. 1714. Otherwise, if the co-defendant's statement greatly diverges from the defendant's statement, of if the defendant stands by his earlier statement which is largely confirmed by the co-defendant's statement, the admission of such statement is relatively harmless. *Id.*

Although Respondent maintains that *Cruz* is inapplicable as Galvin and Smith were tried separately, the Second Circuit has held *Bruton* applicable where a police officer at trial of a single defendant reads into evidence a statement inculpating the defendant and made by a non-testifying co-defendant who had entered a plea. *See Mason v. Scully,* 16 F.3d 38 (2d Cir.1994). As *Bruton* pertains to the admission of a co-defendant's confession, rather than the defendant's own confession, it is more analogous to the instant case wherein Galvin challenges the admission of Smith's statement. Nevertheless, in both *Cruz* and *Bruton* the Supreme Court acknowledged that the admission of an inculpating statement by a non-testifying co-defendant will not always rise to a violation of the Confrontation Clause. For example, in *Cruz,* the Court stated that "[a] codefendant's confession will be relatively harmless if the incriminating story it tells is different from that which the defendant himself is alleged to have told, but enormously

damaging if it confirms, in all essential respects, the defendant's alleged confession, it might be otherwise if the defendant were standing by his confession, in which case it could be said that the codefendant's confession does no more than support the defendant's very own case." *Cruz, supra,* at 191, 107 S.Ct. 1714. Additionally, in *Bruton,* the Court acknowledged that "[n]ot every admission of inadmissible hearsay or other evidence can be considered reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.'" *Bruton, supra,* at 135, 88 S.Ct. 1620 (quoting *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953)).

Further, the "hearsay" statement of a co-defendant is presumptively unreliable only absent sufficient independent indicia of reliability. *Lee, supra,* at 539, 106 S.Ct. 2056. Such indicia of reliability includes that the challenged statement corroborates the version of the facts underlying the charged offense as presented by the defendant at trial. *Cruz, supra,* at 191, 107 S.Ct. 1714; *Bruton, supra,* at 135, 88 S.Ct. 1620.

Even if a confrontation problem exists, it may be alleviated by redacting the statement proffered by a co-defendant so that it no longer connects the nondeclarant defendant to the crimes charged. *Kyles, supra,* at 526 (citing *United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990)). In *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), the Supreme Court held that a statement which, despite redaction, obviously directly referred to the defendant and which involves inferences that a jury ordinarily could make immediately, even if the confession were the first evidence produced at trial, violates the Confrontation Clause. In contrast, in *Kyles, supra,* the court held that the defendant's confrontation rights were not violated when a statement by the non-testifying co-defendant who was also defendant's brother was admitted at trial with all references to "my brother" redacted and replaced with "he." *Kyles,* at 526. The court found it significant that such statement was, absent further independent evidence, insufficient to connect defendant to the crime. *Id.*

■ In the instant case, Smith's statement which Officer Gould read into evidence, by stipulation, at trial was redacted. (T. 128–29). Galvin is mentioned in the redacted statement as accompanying Smith to the bar on January 17, 1990 where Galvin played pool for several hours. (T. 129). According to the redacted statement, Galvin, Smith and Denner were the last people in the bar that night. (T. 130). Smith's redacted statement also indicates that Smith stabbed Denner with a knife he had obtained from Galvin, but does not specify the circumstances under which he came to be in possession of Galvin's knife. (T. 130). The balance of Smith's redacted statement does not refer to Galvin. Although the jury could infer from Smith's redacted statement that Galvin was a willing participant in the robbery and was aware force would be used in the robbery of Denner, as the statement does not indicate when Smith obtained Galvin's knife in relation to when Smith signaled his intent to rob Denner to Galvin, the statement, standing alone, does not directly inculpate Galvin in the crime of felony murder. As such, Smith's statement it is not incriminating beyond Galvin's own words. Moreover, Smith's statement does not contradict but, rather, is corroborated by Galvin's own statement to Gonzalez as well as his testimony at trial. Its reliability can thus be sufficiently established through independent indicia. *Lee, supra,* at 539, 106 S.Ct. 2056. Accordingly, its admission did not violate Galvin's right of confrontation. *Cruz, supra,* at 191, 107 S.Ct. 1714; *Bruton, supra,* at 135, 88 S.Ct. 1620.

■ Alternatively, even if the admission of Smith's redacted statement violated Galvin's Sixth Amendment right to confrontation, reversal is not mandated where " 'the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.' " *Kyles, supra,* at 526–27 (quoting *Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)). Accordingly, such error is trial error subject to harmless error review. *Yarborough v. Keane,* 101 F.3d 894, 898 (2d Cir.1996) (citing *Arizona v. Fulminante,* 499 U.S. 279, 307, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)), *cert. denied,* 520 U.S. 1217, 117 S.Ct. 1706, 137 L.Ed.2d 831 (1997); *Kyles, supra,* at 526–27. The test for harmless error in the context of habeas review is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States Regenbogen,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). In such cases, "there is no reasonable probability that the *Bruton* violation infected the verdict." *Kyles,* at 527.

Here, the court finds that in spite of Galvin's waiver of any objection and assuming, *arguendo,* the admission of Smith's redacted statement violated the Confrontation Clause, such violation was harmless error. Although the jury could have inferred from the statement that Galvin willingly gave Smith his knife and thus was aware of Smith's intention, the prejudicial effect of such inference was insignificant in light of Galvin's own admission at trial that he gave Smith the knife *after* Smith told Galvin he intended to rob Denner and invited Galvin to participate in the crime. (T. 153–58; 206–208, 210). Galvin admitted at trial that although he usually wore his knife on his belt, he removed it from his belt and concealed it in his coat prior to entering the bar. (T. 235, 251–53).

Nothing in Galvin's testimony indicated that he attempted to get help for Denner after he saw Smith stabbed him. Galvin admitted he threw away the knife sheaf which Smith returned to him after the murder. (T. 156). Galvin also admitted that he willingly accepted a portion of the robbery proceeds from Smith. (T. 156–57, 223). Moreover, the jury could reasonably infer from Galvin's testimony at trial that he told his girlfriend that he planned to turn himself in demonstrated Galvin believed he was guilty of a crime. (T. 224–25). *Cruz, supra,* at 191, 107 S.Ct. 1714. Based on Galvin's own testimony, the jury could reasonably infer Galvin and Smith planned to use the knife in carrying out a robbery. The fact that Smith actually killed Denner and such was not part of the plan is irrelevant to a felony murder conviction. *People v. Stokes,* 88 N.Y.2d 618, 648 N.Y.S.2d 863, 671 N.E.2d 1260, 1264 (1996) ("in felony murder the underlying felony is not so much an element of the crime but instead functions as a replacement for the mens rea or intent necessary for common-law murder.") (quoting *People v. Berzups,* 49 N.Y.2d 417, 426 N.Y.S.2d 253, 402 N.E.2d 1155, 1160 (1980)).

This case is also readily distinguishable from *Cruz, Lee, Bruton* and *Mason* which held that the violation of defendant's constitutional right to confrontation warranted reversal. As discussed, *Cruz* challenged the admissibility of a co-defendant's statement which "interlocked" with the defendant's own earlier incriminating statement he gave to a police officer and which the defendant sought to avoid at trial. The Confrontation Clause issue raised in *Lee* was whether a co-defendant's confession which was hearsay and made after the co-defendant was informed that he had been implicated in the subject crimes by the defendant, who had also confessed, was presumptively unreliable absent sufficient indicia of reliability flowing from either the surrounding circumstances or the confessions' interlocking character. In *Bruton,* a postal inspector's testimony at a joint trial

as to a non-testifying co-defendant's statement implicating both defendant and co-defendant in an armed postal robbery was the only evidence presented against the defendant who did not testify. In *Mason*, hearsay testimony by a police officer as to investigative actions taken resulting from a conversation with a co-defendant who was unavailable to testify was the only evidence at trial which placed the defendant at the scene of the crime, in circumvention of *Bruton*'s requirements.

Significantly, in none of the above cases did the challenged statements parallel any defendant's own statement on which he relied in his defense. Here, Smith's redacted statement did not contradict any of Galvin's testimony on the key points of his defense. As noted, Galvin's chief defense was that he was, prior to giving his knife to Smith, unaware that Smith intended to rob Denner. Furthermore, as the statement Galvin gave to Officer Gonzalez upon his arrest and which was read into evidence at trial was consistent with Galvin's testimony that he gave the knife to Smith after learning that Smith intended to rob Denner, the inference is that at trial Galvin made no attempt to recant his earlier statement. Accordingly, Smith's redacted statement was not without any indicia of reliability and did not create a devastating effect on Galvin's defense. *See Cruz, supra*, at 191, 107 S.Ct. 1714.

On this record, the court finds no violation of Galvin's Sixth Amendment right to confrontation and that even if the admission of Smith's redacted statement at trial violated the Confrontation Clause, such error was harmless in light of the substantial incriminating evidence provided by Galvin and his prior statement at trial. Accordingly, the petition for habeas relief on this ground should be DENIED.

### 3. *Brady Violation*

██ Galvin maintains that the prosecution failed to turn over all exculpatory material as required under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Petition, ¶ 12C. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) requires that the prosecution must provide defendant with all exculpatory evidence that is material either to defendant's guilt or punishment. Further, where a *Brady* violation occurs, "failure to disclose such evidence constitutes a due process violation 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Tinsley v. Kuhlmann*, 973 F.2d 163, 166 (2d Cir.1992) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). In this context, a "reasonable probability" is defined as "'a probability sufficient to undermine the confidence in the outcome,' one that might make the difference between a verdict of guilt and innocence." *Tinsley, supra* (quoting *Bagley, supra*, at 682, 105 S.Ct. 3375).

██ Specifically, Galvin claims that a statement given to the police by Cleophus Sanders on January 19, 1990 was withheld. *Id.* According to Galvin, the statement was exculpatory in nature as it recounts that a confession made by Smith to Sanders varied from Smith's statement which was admitted at trial, and was made while Smith was attempting to flee the jurisdiction. *Id.* Galvin maintains that the statement indicates that Galvin lacked the culpability necessary to support a felony murder conviction. Traverse filed August 12, 1997 (Docket Item No. 10), at 2.

In his statement, Sanders explains that at 10:00 A.M. on January 18, 1990, he was in his car preparing to leave his house when his "good friend" Smith ran out of the house next door and asked Sanders to drive him to Rochester, New York. After Smith promised to purchase gasoline for the vehicle, Sanders agreed. Upon arriving in Rochester, Sanders spent some time driving Smith around several streets looking at cars. Because Smith was "quiet," Sanders asked him if anything was wrong and Smith confessed that he had stabbed

Denner at the bar with a knife provided by Galvin. Smith denied having fought with Denner and became evasive when Sanders asked him why he stabbed Denner. Sanders asked Smith "was it a robbery and Leroy [Smith] said nothing just shook his head and kept taking a deep breath." According to Sanders, Smith explained that he was at the bar with Galvin and that after he stabbed Denner, Galvin ran out the door. Smith indicated to Sanders that he knew he was going to prison and that he would rather die. Sanders then drove Smith back to his sister's house and contacted some other people including Smith's father and some friends who managed to convince Smith to surrender to the police.

Here, Galvin has not explained how the material he alleges was wrongfully withheld would have resulted in a verdict other than guilty on all counts. Moreover, the allegedly exculpatory evidence relates only to the fact that it was Smith, rather than Galvin, who actually stabbed Denner, a fact not in dispute at trial. While Sanders stated that Smith shook his head when asked whether he had been involved in a robbery, nothing indicates that such gesture indicated an affirmative or negative response to the question and Smith "said nothing." Indeed, the statement corroborates Galvin's own statements at trial that he concealed his knife prior to entering the bar on the evening January 17, 1990 and handed the knife to Smith upon his request. It does not contradict Galvin's statements that he knew Smith intended to rob the bar, and that Galvin was not drunk either when he handed his knife to Smith or when Smith stabbed Denner. On this record, the court finds that had Sanders's statement been disclosed earlier, there is no reasonable probability that the outcome of the trial would have been any different. *See Tinsley, supra.* Galvin's petition on this ground should therefore be DENIED.

**4. *Ineffective Assistance of Trial Counsel***

Galvin also maintains that he was denied effective assistance of trial counsel when his attorney stipulated to the admission at trial of Smith's redacted statement, failed to object to the prosecution's withholding of the allegedly exculpatory statement made by Sanders, and failed to investigate the fact that Smith actually made two statements which varied from each other. Petition, ¶ 12D.

 The standard for evaluating claims of ineffectiveness of counsel is whether the attorney provided "reasonably effective assistance" when considering the totality of the circumstances. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, a petitioner must demonstrate that "(1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *Bunkley v. Meachum,* 68 F.3d 1518, 1521 (2d Cir.1995) (citing *Strickland, supra,* at 688, 694, 104 S.Ct. 2052). The validity of a habeas petitioner's ineffective assistance of counsel claim is demonstrated by satisfying both elements of the two-part test established in *Strickland, supra. Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994).

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 100–101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). As there are "countless ways to provide effective assistance in any given case," consideration of an ineffective assistance of counsel claim under the Sixth Amendment requires viewing the reasonableness of the counsel's challenged conduct with respect to the facts of the case as of the time of the counsel's conduct. *Strickland,* at 689–90, 104 S.Ct. 2052. Further, dissatisfaction with the ultimate result of criminal proceedings is not a viable ground for federal habeas based on claimed ineffec-

tive assistance of counsel. *Smith v. Hoke,* 1988 WL 86312 (N.D.N.Y.1988), *aff'd,* 875 F.2d 857 (2d Cir.1989) (dissatisfaction with outcome is insufficient to substantiate claim for habeas relief based on denial of right to effective assistance of counsel).

▮ In the instant case, Galvin's petition must be dismissed as he has failed to establish either prong of the *Strickland* test with regard to the underlying claimed Sixth Amendment violations. Galvin first asserts that his attorney erred by stipulating to the admission at trial of Smith's redacted statement. In *Mason, supra,* the court granted the defendant's habeas petition on the basis that the admission of such statement at trial violated the confrontation clause as the outcome of the trial would likely have been different absent such violation. *Mason, supra,* at 43–45. Trial defense counsel's performance thus fell below the constitutional standard based on his failure to object to the obvious violation of the defendant's constitutional rights. *Id.*

In this case, the court finds there was probable error in stipulating Smith's redacted statement into evidence. Defense counsel's reason for such agreement as an admission against interest (T. 99) appears erroneous as, under New York law, such statements are generally admissible at trial only against their authors. *People v. Morgan,* 76 N.Y.2d 493, 561 N.Y.S.2d 408, 562 N.E.2d 485, 487 (1990) (statement against co-defendant's penal interest admissible against defendant only absent any motive for declarant to "curry favor with authorities, shift blame, receive immunity from prosecution, or obtain favorable plea bargain"). As none of these prerequisites to admissibility were established in this case, Smith's statement was probably inadmissible as a matter of New York law. Nevertheless, even if Smith's redacted statement should not have been admitted, such error does not rise to a violation of Galvin's Sixth Amendment right to counsel

as it fails to satisfy the second prong of the *Strickland* test.

Specifically, a viable ineffective assistance of counsel claim requires the petitioner demonstrate that the underlying action on which such claim is based was meritorious. *See United States v. Matos,* 905 F.2d 30, 32 (2d Cir.1990) (ineffective assistance of counsel claim predicated on defense counsel's failure to move to suppress evidence requires habeas petitioner demonstrate a suppression motion at issue would have been meritorious resulting in a different verdict). In the instant case, the court has already determined that the redacted statement did not violate the Confrontation Clause. Discussion, *supra,* at 14–22. It follows that counsel's failure to object to the admission of Smith's redacted statement and to the withholding of Sanders's statement were neither deficient nor could they have prejudiced Galvin at trial.

As to Galvin's contention that his trial counsel erred in failing to object to the prosecution's withholding of Sanders's statement, the court has already determined that such statement was not exculpatory in nature. Discussion, *supra,* at 22–24. Accordingly, his attorney's failure to earlier procure a copy of Sanders's statement also cannot serve as a basis for a right to effective assistance of counsel claim and the court need not further consider Galvin's ineffective assistance of counsel claim on his first two grounds.

▮ With regard to Galvin's claim that his defense counsel neglected to investigate the fact that Smith actually made two statements which varied from each other, Galvin has not demonstrated the existence of a reasonable probability that such investigation would have resulted in a different outcome at trial. The court is in possession of both of Smith's statements—the one from which Officer Gould read at trial and another one which was not admitted into evidence.[8] The statement not pre-

---

8. The court is in possession of both the redacted version of Smith's statement which

was read into evidence as well as the unredacted version of that same statement.

sented at trial was made approximately two hours prior to the statement which was redacted and read into evidence. A plain reading of those two statements indicates that Smith's earlier statement was more incriminating of Galvin than the latter statement as in his first statement Smith maintains that it was Galvin who stabbed Denner whereas in the latter statement, Smith admits that he stabbed Denner. In both statements, Smith maintains that it was Galvin's idea to rob Denner although that portion of Smith's statement from which Gould read at trial was redacted. As Smith's second statement indicates that it was Smith, rather than Galvin, who stabbed Denner, a reasonable inference is that Smith's second statement, instead of recanting from an earlier statement which was more incriminating, states the true extent of his involvement in Denner's death. Significantly, Galvin has not explained how an investigation as to why Smith gave inconsistent confessions reasonably would have resulted in a different outcome at trial. Accordingly, trial counsel's failure to investigate why Smith gave two different statements regarding Denner's murder does not rise to an ineffective assistance of counsel violation.

As such, Galvin has failed to establish both prongs of the *Strickland* test and habeas relief based on ineffective assistance of counsel should be DENIED.

### CONCLUSION

Based on the foregoing, Galvin's petition should be DISMISSED. Further, as the court finds there is no substantial question presented for appellate review, a certificate of appealability should not issue. 28 U.S.C. § 2253, as amended by the Antiterrorism and Effective Death Penalty Act of 1996.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Petitioner and the Respondent.

SO ORDERED.

May 18, 1999.